**In Re: The Nomination Petition of Sheila Dow FORD for the Office of Representative in the U.S. Congress of District Number 17.**

**Objection of: Yesenia A. Rosado.**

Commonwealth Court of Pennsylvania.

Heard April 7, 2010.
Decided April 12, 2010.
Publication Ordered May 3, 2010.

Karen M. Balaban, Harrisburg, for petitioner.

1. Act of June 3, 1937, P.L. 1333, *as amended,* *added by* the Act of December 12, 1984, P.L.

Tiffany L. Robinson and Gerald S. Robinson, Harrisburg, for respondent.

OPINION BY Senior Judge KELLEY.

Presently before the Court is the Petition to Set Aside the Nomination Petition of Sheila Dow Ford (Candidate) as a Democratic Candidate for the Office of Representative in the United States Congress from the 17th Pennsylvania Congressional District in the General Primary Election to be held on May 18, 2010. The Petition to Set Aside the Nomination Petition was filed in this Court on March 16, 2010 by Yesenia A. Rosado (Objector).

Under Section 912.1(12) of the Pennsylvania Election Code (Election Code),[1] a candidate for the Office of Representative in the United States Congress must present at least 1000 valid signatures of registered and enrolled electors of the political party of the candidate. Objector seeks to invalidate a number of the 1,638 signatures contained in the Candidate's Nomination Petition.

On March 19, 2010, this Court entered a Scheduling and Case Management Order scheduling a hearing on the Petition to Set Aside for April 7, 2010, at 10:00 a.m., EDST, and imposing certain duties and obligations upon Objector and Candidate. Therein: (1) Objector was ordered to secure the services of a court stenographer for the hearing and to personally serve Candidate or an adult member of Candidate's family on or before 5:00 p.m. on March 29, 2010, and to promptly file proof of service with the Chief Clerk; (2) Objector and Candidate were ordered to identify all witnesses intended to testify at the hearing; (3) Objector was ordered to immediately arrange to meet with Candidate

968, *as amended,* 25 P.S. § 2872.1(12).

or her representative to review before the hearing each and every challenged signature; (4) Objector and Candidate were ordered to file by 12:00 Noon on Monday, April 5, 2010, a Stipulation of the Parties identifying the total number of signatures submitted, the total number of uncontested signatures, the total number of signatures challenged, each and every signature challenged by page number and line number, and each and every signature to be stricken off as invalid or for which an objection is to be withdrawn; and (5) Objector and Candidate were permitted to file by 12:00 Noon on Monday, April 5, 2010, a memorandum of law in support of their respective positions. Objector was also ordered to serve personally or by registered mail a copy of the Scheduling and Case Management Order on the Secretary of the Commonwealth, and to offer proof at the hearing of timely service of the Petition to Set Aside on the Secretary of the Commonwealth.[2]

Counsel for Candidate entered an appearance with this Court on March 29, 2010. On April 1, 2010, this Court entered an order scheduling a pretrial conference at 9:30 a.m. on April 7, 2010, before the scheduled hearing in this matter.

On April 5, 2010, Objector filed the following documents: (1) Stipulation of Objector; (2) Objector's Witness List; (3) Objector's Memorandum of Law RE: Affidavit of Circulator and Prothonotary's "Acknowledgement"; and (4) Amended Certificate of Service indicating that the foregoing documents were served on Candidate. In the "Stipulation of Objector", Objector withdrew challenges to 66 signature lines.

Candidate filed the following documents on April 5, 2010 and April 6, 2010:(1) Stipulations; (2) Sheila Dow Ford's Witness List; (3) Sheila Dow Ford's Motion to Amend Nomination Petitions and Memorandum of Law in Response to Yesenia Rosado's Petition to Set Aside Nomination Petition of Sheila Dow Ford; and (4) Sheila Dow Ford's Supplemental Response to Yesenia Rosado's Petition to Set Aside Nomination Petition of Sheila Dow Ford Motion to Amend Nomination Petition of Sheila Dow Ford; and (5) Certificate of Service indicating that the foregoing documents were served on Objector.

Upon review of the foregoing documents, the Court notes that the parties did not file a "Stipulation of the Parties" as directed by the March 19, 2010 Scheduling and Case Management Order.[3] Further

---

2. Counsel for Objector filed three certificates of service with this Court on March 26 and March 30, 2010. The first indicates that Candidate was personally served with a copy of the Petition to Set Aside on March 17, 2010, at 7:35 p.m. The second certificate of service indicates that a copy of the Scheduling and Case Management Order was personally served upon Leslie Ford, Candidate's husband, on March 17, 2010 at 7:35 p.m. at the same address at which Candidate was served with the Petition to Set Aside. The third certificate of service indicates that a copy of the Scheduling and Case Management Order was served upon the Secretary of the Commonwealth. During the April 7, 2010 hearing in this matter, Counsel for Objector entered into the record proof of personal service of

the Petition to Set Aside upon the Secretary of the Commonwealth.

3. The Court notes that the parties did not provide, in their respective filings, an explanation as to if and when Objector and Candidate or her representative met to review, before the April 7, 2010 hearing, each and every challenged signature or any explanation as to why the parties did not meet as directed by this Court. However, at the April 7, 2010 hearing in this matter, Counsel for Objector informed the Court that she did not formally arrange to meet with Candidate or Candidate's counsel prior to the hearing. Counsel further informed the Court that she did attempt to go to the Dauphin County Bureau of Registrations and Elections during the time frame she believed that Candidate was there

review of the documents filed in this matter reveal that the only item that Objector and Candidate agreed upon prior to the April 7, 2010 hearing was that Candidate's Nomination Petition contains 1,638 signature lines.

The pre-trial conference in this matter convened at 9:30 a.m. on April 7, 2010. During the pre-trial conference, the parties stipulated as follows:

1. Candidate's Nomination Petition contains 1,638 signatures.

2. Objector is challenging 538 signature lines on the basis that the circulator affidavits are invalid because the affidavits were not properly acknowledged or notarized.

3. Objector withdrew her challenges to 111 signature lines on the basis that the circulators were not the actual circulators of pages 1, 30, 48, 49, 50, and 54 of Candidate's Nomination Petition.

4. Objector is challenging 3 signature lines on page 38 of the Nomination Petition.

Thereafter, the hearing on Objector's Petition to Set Aside commenced. At the beginning of the hearing, the parties stipulated as follows:

1. There are 1,031 uncontested signatures on a line by line basis on Candidate's Nomination Petition.

2. In paragraph 10 of the Petition to Set Aside, Objector challenged page 38 of Candidate's Nomination Petition. Candidate conceded that the circulator,

Martha Robinson, of page 38 of Candidate's Nomination Petition is not a registered voter. Therefore, the 5 signature lines of page 38 are invalid and will be stricken.

3. Paragraphs 11 and 12 of the Petition to Set Aside challenging 111 signature lines on the basis that the circulators were not the actual circulators of pages 1, 30, 48, 49, 50, and 54 of Candidate's Nomination Petition are withdrawn. [This is the same stipulation that was agreed to at the pre-trial conference— see # 3 above.]

4. Paragraph 36 of the Petition to Set Aside challenging one signature line on page 31, line 1 of Candidate's Nomination Petition on the basis that the address of the signer does not match the address on the signer's voter registration card is withdrawn.

5. Paragraphs 37 through 40 the Petition to Set Aside challenging 36 signature lines on the basis that the circulator of pages 31 and 44 of the Candidate's Nomination Petition was not validly registered or a qualified elector are withdrawn.

6. Paragraph 13 of the Petition to Set Aside stating that Stephen E. Farina is the Prothonotary of Dauphin County is accepted as fact by Objector and Candidate.

7. Objector and Candidate accept as fact, with respect to pages 2, 3, 4, 5, 6, 43, 47, 48, 49, 50, 52, 54, 56, 57, 58, 59,

---

reviewing the challenged signatures but that Candidate and/or her representatives were gone by the time Counsel arrived. While the Court appreciates Counsel's candor in acknowledging that she did not comply with paragraph 3(A) of the March 19, 2010 Scheduling and Case Management Order, the Court expects all counsel in election matters in the future to fully comply with scheduling and case management orders or face possible monetary sanctions. The purpose of schedul-

ing and case management orders in election cases is to facilitate the proceedings in an expeditious and timely manner due to the extreme time limitations placed on election matters. That is why objectors are ordered to immediately arrange to meet with the candidate or his/her representative to reach a stipulation as to the number of signatures that are challenged and/or valid. In short, time is of the essence in election matters. As such, the Court expects compliance.

60, 61, and 62, as set forth in paragraph 14 of the Petition to Set Aside, that:

a. The circulator's affidavit on the left hand column on side 2 of each of the aforementioned petition pages where Stephen E. Farina's name appears in his official capacity as the Prothonotary as the person swearing and subscribing that each circulator completed and signed the circulator's affidavit, that Stephen E. Farina did not place any of the information on side 2 of the aforementioned petition pages, that Stephen E. Farina did not witness the circulator complete any information on the right hand column of side 2 of the aforementioned petition pages, and that Stephen Farina has no familiarity or first hand knowledge of the information contained in the circulator's box on side 2 of the aforementioned petition pages.

b. The seal of the Office of Prothonotary of Dauphin County is embossed on side 2 of each of the aforementioned petition pages.

c. A Deputy Prothonotary of Dauphin County completed the information on the left hand column of the circulator's affidavit located on side 2 of each of the aforementioned petition pages.

d. One of several Deputy Prothonotaries of Dauphin County personally witnessed the circulator of each of the aforementioned petition pages sign the circulator's affidavit, asked for identification or personally knew who the circulator was, and asked the circulator to swear and affirm the circulator's affidavit.

e. A Deputy Prothonotary of Dauphin County affixed the seal of the Office of Prothonotary of Dauphin County on side 2 of each of the aforementioned petition pages.

f. Each Deputy Prothonotary that witnessed the circulator sign the circulator's affidavit on each of the aforementioned petition pages took an oath after Stephen E. Farina was sworn in as Prothonotary of Dauphin County to enable each Deputy Prothonotary to sign or acknowledge documents on Stephen E. Farina's behalf.

e. The names of the Deputy Prothonotaries of Dauphin County who added the information on the left hand column of the circulator's affidavits on behalf of Stephen E. Farina on side 2 of the aforementioned petition pages are:

1. Aleshia Redmond
2. April Welcomer
3. Autumn Hock
4. Leeann Bechtel
5. Stephanie Griffith
6. Tai Washington
7. Yvette Cabeza

Accordingly, based on the foregoing stipulations, the following 5 signatures are stricken from Candidate's Nomination Petition:

| PAGE | SIDE | LINE |
|------|------|------|
| 38 | 1 | 1, 2, 3, 4, 5 |

 The Court now turns to the merits of the Petition to Set Aside. Initially, this Court notes that it is well established that the Election Code should be construed liberally "so as to not deprive an individual of his right to run for office, or the voters of their right to elect a candidate of their choice." *Ross Nomination Petition*, 411 Pa. 45, 190 A.2d 719 (1963). The purpose of the Election Code is to protect, not defeat, a citizen's vote. *Dayhoff v. Weaver*, 808 A.2d 1002 (Pa.Cmwlth. 2002), *petition for allowance of appeal denied*, 572 Pa. 767, 819 A.2d 548 (2003). Furthermore, the party alleging defects in a nominating petition has the burden of proving such. *Nomination Petition of Wagner*, 102 Pa.Cmwlth. 174, 516 A.2d 1276 (1986).

Where the Court is not convinced that challenged signatures are other than genuine, the challenge is to be resolved in favor of the candidate. *In re Nomination of Flaherty,* 564 Pa. 671, 682, 770 A.2d 327, 333 (2001). However, the Court is mindful that it must strike a balance between the liberal purposes of the Election Code, and the provisions of the Election Code relating to nominating petitions that are necessary to prevent fraud and to preserve the integrity of the election process. *In re Nomination Petition of Shimkus,* 946 A.2d 139 (Pa.Cmwlth.2008).

## I. ACKNOWLEDGEMENTS

Objector contends that pages 2, 3, 4, 5, 6, 43, 47, 48, 49, 50, 52, 54, 56, 57, 58, 59, 60, 61, and 62 of Candidate's Nomination Petition must be stricken because the pages were not properly acknowledged or notarized. Objector contends that Stephen E. Farina is not a notary; therefore, he was not authorized to notarize the circulator's affidavit. Objector contends further that while Mr. Farina, as Prothonotary of Dauphin County, is permitted by the Uniform Acknowledgment Act[4] (UAA) to acknowledge affidavits, the stipulated facts in this matter show that he was not the acknowledging officer of the circulator affidavits. Objector points out that Mr. Farina did not sign his name, did not affix his official seal, and did not insert the title of his office to the circulator affidavits on the challenged Nomination Petition pages. Objector points out further that since Mr. Farina was not personally present when the affidavits were completed, he did not ascertain the identification of the circulator. Objector argues further that the format of the circulator's affidavit as found on a nomination petition does not meet the statutory requirements for a certificate of acknowledgment; therefore, a certificate,

separate from the pre-preprinted information contained in the affidavit of circulator box, must be prepared and presented by an acknowledging officer in accordance with Section 7 of the UAA, 21 P.S. § 291.7.

Finally, Objector contends that although a deputy prothonotary may also make acknowledgements, there is no authority under the UAA to do so under another person's name or title. Objector argues that this is a case of misrepresenting the person before whom an oath and acknowledgement was given and it is a fatal flaw to the Nomination Petition resulting in the striking of all 538 names contained on the challenged pages.

In response, Candidate argues that either a prothonotary or deputy prothonotary may acknowledge any document pursuant to the UAA. Candidate contends that the Deputy Prothonotaries of Dauphin County have the authority to sign on Mr. Farina's behalf and that it is a common practice of the Prothonotary's Office to permit the Deputy Prothonotaries to sign on Mr. Farina's behalf. In addition, Candidate points out that pursuant to Sections 2734 and 2737 of the Judicial Code, a deputy prothonotary has the power and duty to administer oaths and affirmations and take acknowledgments. 42 Pa.C.S. §§ 2734; 2737. As such, the Deputy Prothonotaries properly acknowledged pages 2, 3, 4, 5, 6, 43, 47, 48, 49, 50, 52, 54, 56, 57, 58, 59, 60, 61, and 62 of the Nomination Petition by signing Stephen E. Farina's name thereto. Candidate directs this Court's attention to a recent decision by the Court of Common Pleas of Dauphin County wherein the common pleas court dismissed the petition to set aside the nomination petition of Clarence Marsh for Office of School Director based on the testimony adduced at the hearing verifying

---

4. Act of July 24, 1941, P.L. 490, *as amended,* 21 P.S. §§ 291.1–291.13.

that a properly deputized prothonotary acknowledged the circulator affidavits. *See In the Matter of Nomination Petition of Clarence Marsh for the Office of School Director,* (C.C.P. Dauphin County, No.2009–CV–03412–EL, filed March 31, 2009).

Candidate recognizes that the challenged pages do not contain the certificate of acknowledgment by the Deputy Prothonotaries who witnessed the circulators sign the circulator's affidavit as required by the UAA. However, Candidate contends that this is an amendable defect and requests that the Court permit the Deputy Prothonotaries to endorse the circulator affidavits on side 2 of pages 2, 3, 4, 5, 6, 43, 47, 48, 49, 50, 52, 54, 56, 57, 58, 59, 60, 61, and 62 by attaching the required certificate.

Section 909 of the Election Code, 25 P.S. § 2869, requires a circulator to attach an affidavit to each sheet of an election candidate's nomination petition. *In re Payton,* 945 A.2d 279, 281 (Pa.Cmwlth.), *aff'd,* 596 Pa. 469, 945 A.2d 162 (2008). The Election Code does not define "affidavit"; however, a definition is contained in Section 1991 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1991, which applies when courts interpret the Election Code. *In re Farnese,* 948 A.2d 215 (Pa.Cmwlth.2008). Section 1991 defines "affidavit" as follows:

> A statement in writing of a fact or facts signed by the party making it, sworn to or affirmed before an officer authorized by the laws of this Commonwealth to take acknowledgments of deeds, or authorized to administer oaths, or before the particular officer or individual designated by law as the one before whom it is to or may be taken, and officially certified to in the case of an officer under his seal of office.

"Thus, when the Election Code requires an affidavit, it must be notarized." *Id.* at 218. The issues presented herein with respect to the validity of the acknowledgment of the circulator's affidavit on each of the challenged pages of the Nomination Petition are ones of first impression for this Court.

■ There is no dispute in this matter that Stephen E. Farina is not a notary public. Mr. Farina is the Prothonotary of Dauphin County, who has the authority to appoint deputies to exercise the powers, and perform the duties by law vested in and imposed upon the prothonotary or the office of the prothonotary. *See* Section 2734 of the Judicial Code, 42 Pa.C.S. § 2734. Section 2737 of the Judicial Code provides that the office of the prothonotary shall have the power and duty, *inter alia,* to:

> (1) Administer oaths and affirmations and take acknowledgements pursuant to section 327 [of the Judicial Code] (relating to oaths and acknowledgements), but shall not be compelled to do so in any matters not pertaining to the proper business of the office.

42 Pa.C.S. § 2737(1).

Mr. Farina testified that it is a practice on a daily basis for the Deputy Prothonotaries of Dauphin County to acknowledge documents, including circulator affidavits, on his behalf, as Prothonotary, due to the number of documents that pass through the Prothonotary's office every day. However, Mr. Farina testified that the Deputy Prothonotaries are only acknowledging that the signer of the document is in fact the person purporting to sign the document. Mr. Farina testified further that the signer is never asked to swear or affirm that the contents of the document are true. Finally, Mr. Farina testified that the ordinary practice of the Office of Prothonotary is the acceptance for filing of

court related papers.[5]

An acknowledgment is a formal declaration or admission before an authorized public officer, by a person who has executed an instrument, that such instrument is his or her act and deed. *Abraham v. Mihalich*, 330 Pa.Super. 378, 479 A.2d 601, 603 (1984). Section 1 of the UAA provides that "[a]ny instrument may be acknowledged in the manner and form now provided by the laws of this State or as provided by this act." 21 P.S. § 291.1. Section 2 provides that "[t]he acknowledgment of any instrument may be made in this State before ... [a] clerk, prothonotary or deputy prothonotary or deputy clerk having a seal" or "[a] notary public." 21 P.S. § 291.1. Section 5 provides that "[t]he officer taking the acknowledgement shall know or have satisfactory evidence that the person making the acknowledgment is the person described in and who executed the instrument." 21 P.S. § 291.5. Section 7 sets forth the form of the certificate that an officer taking the acknowledgment shall endorse on the instrument or attach thereto. 21 P.S. § 291.7. Section 8 provides that "[t]he certificate of the acknowledging officer shall be completed by his signature, his official seal, if he has one, the title of his office, and if he is a notary public, the

date his commission expires." 21 P.S. § 291.8.

For the purposes of Section 5 of the UAA, specifically with regard to determining the identity of the person appearing before the acknowledging officer, Section 12.1 of The Notary Public Law[6] states that " 'satisfactory evidence' means the reliance upon the presentation of a current, government-issued identification card bearing a photograph, signature or physical description and serial or identification number, or the oath or affirmation of a credible witness who is personally known to the [acknowledging officer] and who personally knows the individual."

While there are no current election cases addressing the UAA or the power of a prothonotary or deputy prothonotary to acknowledge a circulator's affidavit pursuant thereto or to Sections 2734 and 2737 of the Judicial Code, the requirements of an acknowledgment pursuant to Pennsylvania's UAA have been thoroughly addressed by the Federal Bankruptcy Courts. For example, in *In Re: Messinger*, 281 B.R. 568, 574 (Bankr.M.D.Pa.2002),[7] the United States Bankruptcy Court for the Middle District of Pennsylvania reviewed the provisions of the UAA and held that "[a]fter a review of the statutory language that ac-

---

**5.** As reflected by Mr. Farina's testimony, the purpose of the office of prothonotary is to maintain custody of the records of the court. Section 2737 of the Judicial Code provides that "[t]he office of the prothonotary shall have the power and duty to exercise the authority of the prothonotary as an officer of the court." 42 Pa.C.S. § 2737(5). In exercising the powers and duties of the office of prothonotary, Mr. Farina may administer oaths and affirmations and take acknowledgements but he is not compelled to do so in any matters not pertaining to the proper business of the office. Section 2737(1) of the Judicial Code, 42 Pa.C.S. § 2737(1).

In contrast, a notary public's only function is the power to administer oaths and affirmations for the general public. *See* Section 16

of The Notary Public Law, Act of August 21, 1953, P.L. 1323, *as amended*, 57 P.S. § 162. Section 16(a) specifically provides as follows:
> (a) Notaries shall have power to administer oaths and affirmations, certify copies and take depositions, affidavits, verifications, upon oath or affirmation and acknowledgments according to law, in all matters belonging or incident to the exercise of their notarial office.

57 P.S. § 162(a).

**6.** *Added* by, Act of December 9, 2002, P.L. 1269, 57 P.S. § 158.1.

**7.** *Aff'd by, Schwab v. GMAC Mortgage Corporation*, 333 F.3d 135 (3d Cir.2003).

knowledgment may be made 'before' a notary public, (21 P.S. § 291.2), as well as a review of the Pennsylvania case law and the history of acknowledgments, this Court finds that presence of the parties is required, with limited exception, for a proper certificate of acknowledgment in Pennsylvania."

The United States District Court for the Eastern District of Pennsylvania was called upon to determine if there was a proper acknowledgement by a notary pursuant to the UAA[8] in *In re Fisher,* 320 B.R. 52 (E.D.Pa.2005). Therein, the District Court held as follows:

In Pennsylvania, acknowledgments are governed by the Uniform Acknowledgment Act, 21 P.S. § 291.1, et seq. (the "UAA"). Pursuant to the UAA, an acknowledgment is made before an authorized officer, who may be a notary public, who must certify the acknowledgment. *See 21 P.S. § 291.2.* A notary who takes the acknowledgment must know or have satisfactory evidence that the person making the acknowledgment is actually the person described in, and who executed, the instrument. *21 P.S. § 291.5.* When a notary certifies a document, the notary attests that the document has been executed, that the notary was confronted by the signor, that the signor is the person whose name is subscribed, and that the notary is verifying the act of execution. *Schwab v. Home Loan & Inv. Bank, FSB (In re Messinger),* 281 B.R. 568, 573 (Bankr.M.D.Pa.2002) (citing *Commonwealth v. Frey,* 258 Pa.Super. 288, 392 A.2d 798 (1978)). *Messinger* also held, pursuant to Pennsylvania law, *Abraham,* 330 Pa.Super. 378, 479 A.2d at 601, that one of the most important functions of the notary is verifying that the individual to be bound to the

agreement has verified the document and such execution is the intentional voluntary act or deed of that party. 281 B.R. at 574. There are only limited circumstances where the notary would be authorized to certify the acknowledgment in absentia. *See 21 P.S. § 291.7.* Here, as in *Messinger,* there were no indications that such circumstances for action in absentia existed .... *Id.* Furthermore, after reviewing the standard forms prescribed for notarization, *id.* (all of which, this Court is constrained to observe, include the language *"in witness whereof"*), and the requirement that the acknowledgment be made "before" an appropriate public official, *21 P.S. § 291.2,* this Court finds that "the presence of the parties is required, with limited exception, for a proper certificate of acknowledgment in Pennsylvania." *See Messinger,* 281 B.R. at 574.

*In re Fisher,* 320 B.R. at 63–64 (footnote omitted).

 In short, as the statutory language of the UAA and The Notary Public Law clearly mandate, the person whose signature is to be acknowledged must appear "before" the acknowledging officer. Moreover, the block on side 2 of the challenged pages of Candidate's Nomination Petition provides that the acknowledging officer is certifying that the circulator "Sworn and subscribed before me". Accordingly, the Court holds that whenever a person who is authorized pursuant to Section 2 of the UAA to acknowledge any instrument, including a circulator's affidavit on a nomination petition or paper, in the Commonwealth of Pennsylvania, that acknowledging officer, including a prothonotary or deputy prothonotary, must personally: (1) attest that the document has

---

**8.** As stated previously herein, a notary public may acknowledge any instrument to be made in the Commonwealth of Pennsylvania. Section 2 of the UAA, 21 P.S. § 291.2.

been executed; (2) that the acknowledging officer was confronted by the signor; (3) that the signor is the person whose name is subscribed; and (4) that the acknowledging officer is verifying the act of execution. In addition, in the specific case of the acknowledgement of a circulator's affidavit in an election matter, the acknowledging officer must attest that the circulator was asked to swear and affirm the circulator's affidavit. Once the acknowledging officer has complied with the foregoing requirements, he or she must endorse on the instrument, including a circulator's affidavit, or attach thereto, a certificate of acknowledgment substantially in the form required by Section 7 of the UAA, 21 P.S. § 291.7.

Therefore, the Court further holds that the acknowledgments by Stephen E. Farina, as Prothonotary of Dauphin County, of the circulator's affidavit on pages 2, 3, 4, 5, 6, 43, 47, 48, 49, 50, 52, 54, 56, 57, 58, 59, 60, 61, and 62 of the Candidate's Nomination Petition are invalid. It is undisputed that Mr. Farina was not personally confronted by the circulators, that he did not personally know or have satisfactory evidence that the circulators were the persons whose names were subscribed, that he did not personally verify the act of execution of each of the circulator's affidavits, and that he did not ask each circulator to swear and affirm the circulator's affidavit.

■ Moreover, the defect in the circulator affidavits is not amendable. This Court has stated that the failure to make an affidavit before a notary is not a mere technical oversight which is amendable but, rather, a fatal defect. *Petition of Kloiber,* 26 Pa.Cmwlth. 50, 362 A.2d 484, 485 (1976); *see also Bolus v. Saunders,* 833 A.2d 266, 269 (Pa.Cmwlth.2003) (stating that the failure to sign an affidavit before a notary is "a defect that cannot be characterized as merely 'technical.' "). In *Petition of Cianfrani,* 467 Pa. 491, 494, 359 A.2d 383, 384 (1976), our Supreme Court recognized the sanctity of the Election Code's affidavit requirement:

> The provisions of the election laws relating to the form of nominating petitions and the accompanying affidavits are not mere technicalities but are necessary measures to prevent fraud and to preserve the integrity of the election process. *See, e.g. Catherine Township Liquor Referendum Case,* 382 Pa. 291, 293, 114 A.2d 145, 146 (1955); *Harrisburg Sunday Movie Petition Case,* 352 Pa. 635, 638, 44 A.2d 46, 47 (1945). The requirements of sworn affidavits are to insure the legitimacy of information crucial to the election process. Thus, the policy of the liberal reading of the Election Code cannot be distorted to emasculate those requirements necessary to assure the probity of the process.

The same must be applicable to an acknowledgment, rather than a notarization, of a circulator's affidavit pursuant to the UAA where the acknowledging officer failed to personally confront the circulator, he did not personally know or have satisfactory evidence that the circulator was the person whose name was subscribed thereto, he did not personally verify the act of execution of each of the circulator's affidavits, and he did not ask the circulator to swear and affirm the circulator's affidavit.

The instant case is clearly not about an improperly completed affidavit or a technical deficiency like that in *Kloiber.* Here, there is no technical mistake that can be amended. We have a Nomination Petition in which some of the pages lack legally sworn affidavits—a fatal defect. As such, the Court has no choice but to strike the 538 signature lines on pages 2, 3, 4, 5, 6, 43, 47, 48, 49, 50, 52, 54, 56, 57, 58, 59, 60,

61, and 62 of Candidate's Nomination Petition.

## II. DECLARATION BY ELECTORS

Objector challenges page 39 of Candidate's Nomination Petition on the basis that the County of the electors who signed page 39 is "Dauphin" County which does not match the county listed in the preamble on page 39, which lists "Schuylkill" as the "County of Signers." [9] Therefore, Objector requests that the Court strike the 44 signature lines contained on page 39 of Candidate's Nomination Petition.

Candidate agreed that the County in which the signors of page 39 reside is Dauphin County and that the preamble on page 39 lists the County of Signors as Schuylkill County. However, Candidate contends that the listing of Schuylkill as the County of Signers was a mistake and an amendable defect. In support of the request to amend, Candidate presented the testimony of the circulator of page 39 of the Nomination Petition, Juanita Smith.

Ms. Smith testified that she is a registered Democrat in Dauphin County, Pennsylvania and that she circulated page 39 of Candidate's Nomination Petition in Dauphin County. Ms. Smith testified that she is familiar with Candidate and that she was asked to circulate page 39 at a church located in Dauphin County where she and Candidate both attend worship services. Ms. Smith testified that Candidate appeared after the worship service in the fellowship room of the church, that Candidate presented herself and spoke to a number of the parishioners who were gathered there, that Candidate informed the parishioners that she was running for office, and that Candidate asked the parishioners to sign her Nomination Petition in order for her to get on the ballot. Ms. Smith testified that she personally saw the electors sign page 39 of Candidate's Nomination Petition at the church located in Dauphin County and that she informed the signers that they had to be registered to vote in Dauphin County. Ms. Smith testified further that she filled in items 1 through 5 of the circulator's affidavit on side 2 of page 39 wherein she filled in Dauphin County in item 1, County of Petition Signers Residence. Ms. Smith testified that she did not see that "Schuylkill County" was listed on the front of page 39 at the time she circulated page 39 but that she did notice the mistake much later.

Candidate also offered the testimony of Leslie Ford, Candidate's campaign manager. However, Objector stipulated that Mr. Ford would testify that he gave page 39 to Ms. Smith to circulate, that he knew Ms. Smith was registered to vote in Dauphin County, that he did not realize that he had written the wrong county of Schuylkill on the front of page 39 until Ms. Smith gave it back to him, and that the listing of Schuylkill County on the preamble of page 39 was a mistake.

In *In re Nomination of Delle Donne*, 779 A.2d 1, 13 (Pa.Cmwlth.), *aff'd*, 565 Pa. 561, 777 A.2d 412 (2001), this Court pointed out that Section 977 of the Election Code, 25 P.S. § 2937, provides in pertinent part that "material errors or defects apparent on the face of the nomination petition" are amendable, after hearing, at the discretion of the court. In *Delle Donne*, there was a conflict in the name of the County on the front of the petition (Fayette) and that contained in the circulator's affidavit on the back of the petition (Alle-

---

9. Pursuant to Section 909 of the Election Code, 25 P.S. § 2869, the signers of a nomination petition must reside in the county in which the petition is circulated. In addition, the circulator must swear and affirm that the signers of the nomination petition reside in the county named in the affidavit, which in this case was Dauphin County.

gheny). This Court held that it was beyond peradventure that such conflict in the name of the counties was a defect apparent on the face of the petition. *Delle Donne*, 779 A.2d at 13. This Court relied upon our Supreme Court's decision in *Jackson v. Fields*, 478 Pa. 247, 249, 386 A.2d 533, 533 (1978), wherein the Supreme Court stated "that nomination petitions shall be treated as lawful for the district intended . . . if they are otherwise in order with respect to the designation of the office and residence of the candidate and of the signers, and if the signers have not been misinformed or misled."

Thus, this Court held that because the face of the petition listed the correct county of the petition signers' residence, and the circulator's attestation was not signed until after all of the petition signers had executed their signatures, the petition was otherwise in order and the signers had not been misinformed or misled into believing that they had to be electors in Allegheny County at the time they signed their names. *Delle Donne*, 779 A.2d at 13–14. Accordingly, we held that it was an amendable defect because it was a defect apparent on its face and could be amended at the discretion of this Court. *Delle Donne*, 779 A.2d at 14 (citing Section 977 of the Election Code, 25 P.S. § 2937; *In re Castellani*, 102 Pa.Cmwlth. 170, 516 A.2d 786 (1986); *In re Snyder*, 102 Pa.Cmwlth. 165, 516 A.2d 788 (1986), *appeal quashed*, 518 Pa. 52, 540 A.2d 264 (1988)).

■ Herein, the alleged defect is apparent on the face of page 39 of the Nomination Petition. Therefore, it is an amendable defect at the discretion of the Court. Based on the credible testimony of Ms. Smith and the stipulated testimony of Mr. Ford, the Court finds that the listing of Schuylkill County on the preamble to page 39 was a mistake, that Ms. Smith circulated page 39 of the Nomination Petition in Dauphin County, that Ms. Smith is registered to vote in Dauphin County, that she signed the circulator's affidavit indicating that the County of the signers of the petition was Dauphin County, and that the signers of page 39 of the Nomination Petition were residents of Dauphin County. The Court finds that the signers of page 39 could not have been misled by the mistake into thinking they were somehow signing as electors of Schuylkill County. Ms. Smith's testimony supports the finding that page 39 was circulated in Dauphin County and Ms. Smith, as the circulator, has sworn to that fact. More importantly, Ms. Smith credibly testified that she informed the signors of page 39 that they had to be registered in Dauphin County.

Accordingly, the Court grants Candidate's request to amend the "County of Signers" listed in the preamble to page 39 of the Nomination Petition to Dauphin County. As such, the Court denies Objector's request to strike the 44 signature lines contained on page 39 of Candidate's Nomination Petition.

### III. PREAMBLE ON PAGE 18

■ Objector contends that the 11 signature lines on page 18 of Candidate's Nomination Petition should be stricken because it does not indicate the year of the primary, the office for which Candidate is seeking and the congressional district number. Objector contends that the missing information is not an amendable defect.

Candidate conceded that the foregoing information is missing but moved to amend page 18 of the Nomination Petition based on the testimony of Candidate and Leslie Ford.

Candidate testified that she personally circulated page 18 of her Nomination Petition. Candidate testified further that at

the time she circulated page 18, she explained to the signers that she was running for Representative in the United States Congress, District PA–17, that she mentioned that the election would be held May 18, 2010, and that she gave each signer a palm card which explained what she was running for and her qualifications. Candidate testified that she handed out the card as an introduction; therefore, each signer was presented with the palm card prior to signing page 18 of the Nomination Petition. Candidate testified further that she completed the information contained in the preamble to page 18, that it was an oversight to omit the missing information, and that page 18 was the only petition page on which she mistakenly omitted the required information.

This Court held in *In re Snyder* that the absence of a district designation on a page of the nomination petition is not a material error. *In re Snyder*, 516 A.2d at 790. In addition, this Court held that the error was amendable and granted the candidate permission to amend the nomination petition based on the candidate's credible testimony, as the circulator of the page in question, that he personally had informed every signer with whom he spoke directly, that he was a candidate for representative in the General Assembly for the 144th legislative district. *Id.*

Herein, this Court finds that the defects on the face of page 18 of Candidate's Nomination Petition are amendable. The Court further finds that Candidate credibly testified that she informed each signer prior to signing page 18 that she was running for the Office of Representative in the United States Congress in the 17th District and that the election was going to be held on May 18, 2010. Accordingly, the Court finds that the signers of page 18 were not misled as to which office Candidate was running, which congressional district she was running in, and the date of the election.

Therefore, the Court grants Candidate's request to amend page 18 of the Nomination Petition to include the missing information. As such, the Court denies Objector's request to strike the 11 signature lines contained on page 18 of Candidate's Nomination Petition.

## IV. PREAMBLE ON PAGES 26 AND 27

▮ Objector contends that the 44 signature lines on pages 26 and 27 of Candidate's Nomination Petition should be struck because the "County of Signers" listed in the preamble to those pages has been altered. Objector contends further that the alterations are not amendable.

Candidate concedes that the "County of Signers" on pages 26 and 27 has been altered but contends the defects are not material because the signers of each petition signed as residents of the County after the name of the County had been altered. In support of Candidate's position, Candidate called Leslie Ford, as circulator of pages 26 and 27.

Mr. Ford testified that he completed the information contained in the preamble on page 26 of the Nomination Petition prior to circulating that page. Mr. Ford testified that he first put in Lebanon County as the County of Signers. However, he was in Dauphin County circulating the Nomination Petition when he needed another page. Therefore, he scratched out "Lebanon" and inserted "Dauphin" above the area where he had crossed out "Lebanon."

The Court finds Mr. Ford's testimony credible that he altered the County of Signers in the preamble on page 26 of the Nomination Petition prior to circulating page 26 in Dauphin County. Mr. Ford signed the circulator's affidavit indicating

that the county of the petition signers was in fact Dauphin County. Accordingly, the Court denies Objector's request to strike the 10 signature lines on page 26 of Candidate's Nomination Petition.

■ With respect to page 27 of Candidate's Nomination Petition, Mr. Ford testified that he was circulating the Nomination Petition in Dauphin County when he realized he once again needed more petition pages. Therefore, he took page 27, which had already been circulated in Berks County where he had obtained 5 signature lines, and scratched out the 5 signature lines obtained in Berks County. Mr. Ford then wrote "Dauphin" over "Berks" in the space for "County of Signers" in the preamble. Mr. Ford testified that he then circulated page 27 in Dauphin County after he had changed the name of the County of Signers in the preamble and scratched out the 5 signatures that he had obtained in Berks County.

This Court finds Mr. Ford's testimony credible. It is clear from page 27 that Mr. Ford did not complete the circulator's affidavit until after he had obtained the signatures in Dauphin County. There is no indication that the circulator's affidavit was altered to remove "Berks" and insert "Dauphin." Accordingly, the Court denies Objector's request to strike the 34 signature lines on page 27 of Candidate's Nomination Petition.

10. As this Court has previously noted, "[t]he SURE system is the Statewide Uniform Registry of Electors, the statewide database of voter registration maintained by the Department of State and administered by each county." *In re Nomination Petition of Morrison–Wesley*, 946 A.2d 789, 792–793 n. 4 (Pa.Cmwlth.), *aff'd*, 596 Pa. 457, 944 A.2d 78 (2008).

11. Section 908 of the Election Code provides that each signer of a nomination petition

## V. INDIVIDUAL LINE CHALLENGES

Objector challenged several of the signature lines on Candidate's Nomination Petition on an individual basis. In support of the challenges, Objector called Mary Ann Boyer, Office Manager for the Dauphin County Bureau of Registrations and Elections, who administers registration rolls on the SURE System.[10] After review of the 50 individual challenged signatures on the SURE System, the parties stipulated that the following 6 signatures should be stricken from Candidate's Nomination Petition:

| PAGE | SIDE | LINE |
|------|------|------|
| 1 | 1 | 6 |
| 28 | 1 | 1, 2 |
| 43 | 1 | 17, 18, 19 |

Accordingly, the foregoing 6 signature lines are stricken from Candidate's Nomination Petition.

■ Based on a review of the remaining 44 individual challenged signatures on the SURE System, the following signature lines are stricken from Candidate's Nomination Petition for the designated reason.

### A. NO PRINTED NAME[11]

| PAGE | SIDE | LINE |
|------|------|------|
| 53 | 1 | 12 |

### B. IN THE HAND OF ANOTHER[12]

| PAGE | SIDE | LINE |
|------|------|------|
| 5 | 1 | 41 |
| 21 | 1 | 21 |
| 37 | 1 | 3, 4 |
| 46 | 1 | 15 |
| 59 | 1 | 18 |

"shall legibly print his name...." 25 P.S. § 2868.

12. *See In re Nomination Petition of Morrison–Wesley*, 946 A.2d at 794 ("[S]ection 908 of the Election Code directs that an elector must sign himself, be a member of the designated party, live in the appropriate district named on the petition, provide his address and date his signature. 25 P.S. § 2868. Each item must be personally written by the elector.") (footnote omitted).

## C. NICKNAMES/INCOMPLETE INFORMATION[13]

| PAGE | SIDE | LINE |
|------|------|------|
| 1 | 1 | 4 |
| 3 | 1 | 6 |
| 3 | 2 | 42 |
| 4 | 1 | 3 |
| 6 | 2 | 31 |
| 7 | 1 | 3 |
| 24 | 1 | 13 |
| 34 | 1 | 4 |
| 36 | 2 | 50 |
| 39 | 1 | 10 |
| 41 | 1 | 11 |
| 45 | 1 | 7, 12 |
| 46 | 1 | 13 |
| 52 | 1 | 12, 25, 26 |
| 58 | 1 | 8, 11 |
| 61 | 1 | 9, 20 |

## D. SIGNATURES DO NOT MATCH VOTER REGISTRATION[14]

| PAGE | SIDE | LINE |
|------|------|------|
| 9 | 1 | 3 |
| 15 | 1 | 2 |
| 16 | 1 | 8 |
| 21 | 2 | 46 |
| 34 | 1 | 22 |
| 22 | 2 | 40 |
| 37 | 2 | 36, 43 |
| 39 | 1 | 20 |
| 42 | 1 | 28 |
| 45 | 1 | 8 |
| 46 | 1 | 22 |
| 52 | 1 | 15 |
| 60 | 1 | 12 |

## E. DUPLICATE SIGNATURE[15]

| PAGE | SIDE | LINE |
|------|------|------|
| 35 | 1 | 21 |

## F. INVALID DATE[16]

| PAGE | SIDE | LINE |
|------|------|------|
| 7 | 1 | 12 |

## VI. CONCLUSION

As stated previously herein, Candidate was required to secure 1,000 valid signatures. The parties stipulated that Candidate had 1,638 signatures on the Nomination Petition. As a result of the Petition to Set Aside, this Court has struck a total of 593 signature lines from Candidate's Nomination Petition. Therefore, Candidate has 1,045 valid signatures remaining. The Petition to Set Aside is dismissed.

### ORDER

AND NOW, this 12th day of April, 2010, it is hereby ordered as follows:

1. Sheila Dow Ford's Motion to Amend Nomination Petitions, specifically, the Motion to Amend Pages 18 and 38, is GRANTED in accordance with the foregoing opinion.

2. The Petition to Set Aside the Nomination Petition of Sheila Dow Ford as a Democratic Candidate for the Office of Representative in the United States Con-

---

13. The law is well settled that a signature line that is signed by an elector using a nickname or an initial instead of his or her full name as it appears on the elector's voter registration card must be stricken from the nomination petition. *See In re Fitzpatrick*, 822 A.2d 859 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 573 Pa. 700, 825 A.2d 1262 (2003) (Where the signer uses simply the first letter of the first name, the signature must be stricken as an improper deviation from elector's signature on voter registration card.); *In re Petition for Agenda Initiative*, 821 A.2d 203 (Pa.Cmwlth.2003) (Voter signatures on initiative petition that used nicknames or initials that differed from the voter registration cards were not valid signatures and were to be stricken from petition.); *In re Nomination of Cooper*, 163 Pa.Cmwlth. 430, 643 A.2d 717 (1994) (Absent evidence confirming the identity of the electors who signed using a nickname, the signatures must be stricken.).

14. An elector's name will be stricken where it does not match the signature on the voter registration card. *In re Nomination of Flaherty*, 564 Pa. 671, 770 A.2d 327 (2001).

15. Pursuant to Section 908 of the Election Code, an elector may only sign his or her name once a nomination petition. 25 P.S. § 2868.

16. The date of signing, February 4, 2010, was before the first day, February 16, 2010, that Candidate was permitted to circulate her Nomination Petition.

gress from the 17th Pennsylvania Congressional District in the General Primary Election to be held on May 18, 2010, is DISMISSED.

2. Objector, Yesenia A. Rosado, shall bear the cost of the stenographer. Otherwise, each party shall bear their own costs.

3. The Chief Clerk of the Court shall notify the parties and their counsel of the Court's decision and shall also certify and forward a copy thereof to the Secretary of the Commonwealth of Pennsylvania.