54 A.3d 855

In re NOMINATION PETITION OF Andrew GALES as
a Democratic Candidate for State Representative
in the 57th District.

**Appeal of Andrew Gales.**

Supreme Court of Pennsylvania.

Submitted March 21, 2012.

Decided April 4, 2012.

94

David J. Montgomery, Montgomery Law Firm, Pittsburgh, LLC, for Andrew Gates.

Lawrence M. Otter, Harrisburg, for James R. Barbre and Robert E. Cole.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice BAER.

This is a direct appeal from a Commonwealth Court order setting aside the nomination petition of Andrew Gales ("Candidate") as a Democratic Candidate for Pennsylvania State Representative in the 57th Legislative District.[1]   On April 4, 2012, this Court reversed the order of the Commonwealth Court, directed that Candidate's name be printed on the April 24, 2012 primary election ballot, and indicated that

1. We have exclusive jurisdiction in this case because it involves an appeal of a final order entered by the Commonwealth Court in a matter originally commenced in that court.   42 Pa.C.S. § 723(a).

an opinion would follow. This opinion provides the rationale for the Court's previous order, and holds that the Election Code does not prohibit an elector from signing a nomination petition using an obvious diminutive form of his or her first name, rather than the formal first name that appears on the elector's voter registration card.

On February 16, 2012, Candidate filed a nomination petition seeking to be listed on the Democratic ballot in the primary election for Pennsylvania State Representative in the 57th Legislative District. Under the Election Code, the nomination petition of a candidate for such office must contain 300 valid signatures of registered and enrolled members of the Democratic Party from that legislative district. 25 P.S. § 2872.1(14). Candidate's nomination petition contained 395 signatures.

On February 23, 2012, James R. Barbre and Robert E. Cole ("Objectors") filed a petition to set aside Candidate's nomination petition ("petition to set aside"), alleging, *inter alia,* that 119 of the 395 signatures were invalid. The parties thereafter submitted a joint stipulation that 74 of the 395 signatures were invalid, reducing the number of signatures in the nomination petition to 321.

Following an evidentiary hearing on March 6–7, 2012, the Commonwealth Court struck a total of 23 signatures, reducing the number of valid signatures to 298, two less than required under the Election Code. Significantly, the court struck ten of the signatures on the ground that the electors, while eligible and registered Democratic voters from that legislative district, signed the common diminutive version of their first name, instead of signing the full first name that appeared on their voter registration card. *See* Notes of Testimony, Mar. 6, 2012, at 11–22.[2] In support of its ruling in this regard, the Commonwealth Court cited its prior decision in *Piccirilli v. Lee,* 944 A.2d 840, 842 (Pa.Cmwlth.2008), which held that signatures using a "nickname," diminutive or otherwise, instead of a

2. The Statewide Uniform Registry of Electors ("SURE") voter registration cards of challenged electors were entered into evidence, which established the given name of the electors.

given first name should be stricken from a nomination petition absent evidence confirming the identity of the elector.

The following chart identifies the signatures struck on this basis.

| Page | Line | First Name (Diminutive) | First Name (As Listed on Voter Registration Card) | Last Name |
|------|------|-------------------------|---------------------------------------------------|-----------|
| 1 | 6 | Ed | Edward | Christopher |
| 1 | 15 | Cindy | Cynthia | Finch |
| 5 | 11 | Ray | Raymond | Bell |
| 5 | 22 | Don | Donald | Williams |
| 5 | 34 | Jim | James | Ferrett |
| 7 | 19 | Tom | Thomas | Hart |
| 8 | 4 | Ray | Raymond | McGill |
| 24 | 21 | Larry | Lawrence | Pelerose |
| 16 | 6 | Debbie | Debra | Kosnosky |
| 24 | 9 | Jen | Jennifer | Lewis |

The Commonwealth Court struck 13 other signatures for various reasons, including that women signed the nomination petition with their married names although they had registered to vote under their maiden names; that the date listed with the signature was out of sequence with the dates of other signatures on the nomination petition; and that signatures were either illegible, listed an incorrect address, or were signed in handwriting that did not match the signature on the voter registration card. Concluding that Candidate had two less signatures than required, the Commonwealth Court set aside his nomination petition and directed the Secretary of the Commonwealth not to certify Candidate in the primary election for state representative.

▮▮▮▮ In reviewing the order of the Commonwealth Court concerning the validity of challenges to Candidate's nomination petition, our standard of review is "whether the findings of fact are supported by substantial evidence, whether there was an abuse of discretion, or whether errors of law were

committed." *In re Nomination Petition of Flaherty*, 564 Pa. 671, 770 A.2d 327, 331 (2001). A party alleging defects in a nominating petition has the burden of proving such defects, and, where the court is not convinced that challenged signatures are other than genuine, the challenge is to be resolved in favor of the candidate. *Id.* Further, the Election Code should be liberally construed to protect a candidate's right to run for office and the voters' rights to elect the candidate of their choice. *In re Nomination Petition of Wesley*, 536 Pa. 609, 640 A.2d 1247, 1249 (1994).

Candidate contends that the Commonwealth Court erred by striking signatures on the ground that the electors signed the common shortened form of their first names, rather than the formal first names that appear on their voter registration cards.[3] He submits that Section 908 of the Election Code, which delineates the manner of signing nomination petitions, does not require the elector to sign his or her formal first name, but rather directs only that all electors sign their name to a candidate's nomination petition.[4]

Candidate emphasizes that all of the signatures struck on this basis were obvious diminutive forms of the formal first names, such as Ed for Edward and Ray for Raymond, as set forth *supra*. Thus, he maintains, the use of the diminutive form of the electors' first name presents no danger of fraud, particularly where Objectors have not contended that the electors were in any way ineligible to sign his nomination petition. Candidate relies on the aforementioned principles that the Election Code should be liberally construed to protect

3. Candidate also challenges the Commonwealth Court's striking of signatures listing the electors' married name although the electors had registered to vote in their maiden name, and the striking of a signature on the basis that the date listed was out of sequence with the dates of other signatures on the nomination petition. Further, Candidate argues that the petition to set aside should have been dismissed because the objectors failed personally to serve him with a copy of the petition (it was delivered by Federal Express). As we find that Candidate is entitled to relief based on his challenge to the striking of diminutive signatures, we need not address his further contentions.

4. The relevant portions of Section 908 of the Election Code are set forth on page 6, *infra*.

a candidate's right to run for office and the voters' right to choose their candidate, and that any doubts as to the validity of a challenge must be resolved in favor of the candidate.

Regretfully, Candidate does not analyze the case law relied upon by the Commonwealth Court, which we discuss in detail *infra,* addressing discrepancies between an elector's signature on a nomination petition and the name appearing on the elector's voter registration card. Rather, Appellant cites two unpublished Commonwealth Court decisions in which that court purportedly rejected challenges based upon the use of diminutive forms of the electors' formal first names. *See* Brief of Appellant at 8–9 (citing *In re Nomination Petition of Altmire,* 114 M.D.2012; *In re Nomination Petition of Gearing,* 128 M.D.2012). He also relies on cases unrelated to the Election Code, holding that a prohibition on the use of a common diminutive first name would "offend reason" in the context of perfecting a judgment lien. *Id.* ¶ at 11 (citing *Burns v. Ross,* 215 Pa. 293, 64 A. 526 (1906); *Coral Gables, Inc. v. Kerl,* 334 Pa. 441, 6 A.2d 275 (1939)). Candidate argues that the same analysis should be extended to cases arising under the Election Code.

In response, Objectors categorize a diminutive form of a formal first name as a nickname, and posit that this case is governed by well-established Commonwealth Court case law holding that signatures reflecting the electors' nicknames are invalid because they differ from the name appearing on the electors' voter registration card. See Brief for Appellee at 3 (citing *inter alia, In re: Nomination Petition of Sheila Dow Ford,* 994 A.2d 9, 24 n. 13 (Pa.Cmwlth.2010)) (striking as invalid a signature on a nomination petition that is signed by an elector using a nickname, instead of his or her full name as it appears on the elector's voter registration card); *In re Nomination Petition of Kathleen M. Fitzpatrick,* 822 A.2d 859, 861 n. 3 (Pa.Cmwlth.2003) (noting that a signature using a nickname was invalid as it did not match the elector's first name listed on the voter registration card); *In re Petition for Agenda Initiative,* 821 A.2d 203, 211 (Pa.Cmwlth.2003) (striking as invalid voters' signatures on an agenda initiative peti-

tion using nicknames which were not shown to be the actual signatures of the voters); *In re: Nomination Petition of Charles Cooper,* 163 Pa.Cmwlth. 430, 643 A.2d 717, 726 (1994) (striking as invalid electors' signatures on a nomination petition that reflected a "nickname," such as Mike instead of Michael, instead of the proper name listed on the voter registration affidavit where there was no evidence confirming the identity of the elector).

■ In determining whether the Commonwealth Court erred in striking signatures reflecting an obvious diminutive form of the electors' first name, we begin, as we should, with a review of the governing statutory provision. Section 908 of the Election Code provides, in relevant part, as follows:

> Each signer of a nomination petition shall sign but one such petition for each office to be filled, and shall declare therein that he is a registered and enrolled member of the party designated in such petition. . . . He shall also declare therein that he is a qualified elector of the county therein named. . . . He shall add his residence, giving city, borough or township, with street and number, if any, and shall legibly print his name and add the date of signing, expressed in words or numbers. . . .

25 P.S. § 2868. In interpreting a statute, a court's goal is to ascertain and effectuate the legislature's intent. 1 Pa.C.S. § 1921(a). The statute's plain language is the best indication of that intent. When the statute's words are clear and free from all ambiguity, its letter is not to be disregarded under the pretext of pursuing its spirit. *Id.* ¶ § 1921(b).

Upon examining the plain language of Section 908, we agree with Candidate that this provision does not require that an elector sign his formal first name on a nomination petition nor does it preclude the use of an obvious diminutive version of the elector's first name. Admittedly, the language directing an elector to "sign" and print his "name" is ambiguous, as it does not delineate expressly what form of an elector's name is acceptable. When the words of the statute are not explicit, the intention of the General Assembly can be ascertained by

considering the occasion and necessity for the statute. 1 Pa.C.S. § 1921(c)(1). Our Court has recognized that the signature requirement serves as "a means of preventing forgery and assuring that each elector personally signs the petition with an understanding of what he is signing." *Flaherty*, 770 A.2d at 332. Thus, we must factor into our consideration whether an elector's use of an obvious diminutive form of his first name conflicts with this underlying purpose of Section 908.

We find that it does not. Our decision is based on the fact that the ten names challenged herein are obvious shortened versions of the electors' first names, which do not call into question the identity of the signatory or compromise the integrity of the election process. Any individual examining the face of the nomination petition and comparing the challenged signatures to the voter registration cards of the electors would have no difficulty determining the identity of the signatory.[5] For example, when elector Edward Christopher signed Candidate's nomination petition as Ed Christopher, no great deductive power was required to determine the signatory. The same can be said for each of the remaining diminutive first names set forth at page 3, *supra,* such as Jen for Jennifer and Debbie for Debra. Further, the parties agree that the ten electors whose signatures are challenged were qualified, registered voters who were eligible to sign Candidate's nomination petition.

Accordingly, because the language of Section 908 does not affirmatively preclude the use of an elector's diminutive first name, the use of an obvious diminutive first name does not compromise the integrity of the election process, and because the Election Code is to be liberally construed in favor of the candidate, we conclude that the Commonwealth Court erred by striking the signatures reflecting the electors' obvious diminutive first names.

**5.** As discussed *infra,* this is not necessarily true, however, where the elector signs only the first letter of his or her first name, a nickname, or any other name that, absent other evidence, is not readily identifiable as being the same name that appears on the voter registration card.

We reaffirm the principle that in cases unlike the instant case, where it is not obvious that the signature on the nomination petition reflects the same name that appears on the elector's voter registration card, absent other evidence, the signature should be stricken. For example, if one's formal name is "Beatrice" and the nomination petition is signed "Skippy," then that signature is invalid and should be struck.

In so holding, we acknowledge readily the Commonwealth Court case law that has held to the contrary. In the case of *In re Nomination of Charles Cooper, supra,* the objectors to a nomination petition challenged signatures using "nicknames," such as Mike for Michael, or Terry for Terrance. 643 A.2d at 726. The court held that where the elector signs a nickname on the nomination petition instead of his or her proper name as set forth on the voter registration affidavit, the signature must be stricken. Recognizing that certain cases may be obvious, such as Mike for Michael, the court nevertheless treated all shortened forms of a first name as a "nickname," and held that "[i]n order to be fair and to draw a clear line, without amendment, such a defect requires the signature to be stricken." *Id.* at 726-27.[6]

Interestingly, the Commonwealth Court in *Cooper* distinguished an elector's use of a "nickname" from other circumstances where the signature of an elector on a nomination petition is acceptable, even though it does not match identically the signature of the elector on the voter registration affidavit. Specifically, the court held that it was not required to strike signatures where the elector omits his or her middle initial, a marital prefix, or suffix, such as "Jr." or "Sr." Under those circumstances, the court reasoned, the elector's signature admittedly contains a defect, but that such defect is so insignificant as to not be a material error. *Id.* at 726. It concluded that absent an allegation of fraud, or other basis to cast serious doubt as to the genuineness of the signature, a

6. We question the need for a "clear line" in this regard as the Commonwealth Court will be examining each challenged signature independently and can strike a non-obvious nickname, while accepting a different signature reflecting an obvious shortened form of the elector's first name.

signature with an immaterial error would not be struck. The Commonwealth Court found that it would be totally unreasonable to require electors to remember whether they used a middle initial when they completed the voter's affidavit, in some instances, twenty or thirty years before. *Id.*

The Commonwealth Court's reasoning in *Cooper* served as the basis for its holding in subsequent cases involving challenges to signatures reflecting an elector's "nickname." *See e.g. In re: Nomination Petition of Sheila Dow Ford,* 994 A.2d at 24 n. 13 (citing *Cooper* for the proposition that a signature line that is signed by an elector using a nickname instead of his or her full name as it appears on the elector's voter registration card must be stricken from the nomination petition); *Piccirilli v. Lee,* 944 A.2d at 842 (citing *Cooper* for proposition that absent evidence confirming the identity of the elector, signatures reflecting a nickname must be stricken); *In re Fitzpatrick,* 822 A.2d at 861 n. 3 (same); *In re Petition for Agenda Initiative,* 821 A.2d at 211 (same).[7]

To the extent our holding conflicts with *Cooper* and its progeny relating to commonly accepted shortened versions of an elector's first name, we hereby reject *Cooper's* analysis. We find that the obvious diminutive forms of first names at issue here are more akin to an elector's omission of either a middle initial or a designation as "Jr." or "Sr.," which have both been found to be immaterial defects that do not invalidate the signature. We emphasize that in all challenges to nomination petitions, each signature will have to be examined independently to determine whether, in fact, the diminutive form of the name appearing on the nomination petition is an obvious substitute for the formal name. Such case-by-case determinations are not novel to election cases, in which courts routinely examine each challenged signature individually.

---

7. This Court has not heretofore had the occasion to address the propriety of an elector signing his name on a nomination petition by using an obvious diminutive form of his first name, although we have addressed circumstances, as detailed *infra,* where the elector's signature on the nomination petition differed from the name as set forth on the elector's voter registration card.

Finally, we reconcile our holding herein with our previous holding in *Flaherty, supra,* where we ruled that the Commonwealth Court erred by failing to strike signatures that did not reflect the name or address that appeared on the electors' voter registration card. In *Flaherty,* the objectors challenged signatures on the ground that the electors printed their name as opposed to signed their name on the nomination petition. This Court agreed. Citing the Commonwealth Court's decision in *Cooper,* we stated that "[a]n elector's name will be stricken where the elector prints his name upon a candidate's nomination petition so that it does not match his signature on his voter registration card." *Id.* at 332. Notably, this holding in no way involved an elector's use of an obvious shortened version of his or her first name, but rather was grounded in the mandate of Section 908 of the Election Code, which required electors to "sign" rather than print their name to a candidate's nomination petition. 25 P.S. § 2868. As noted, there is no corresponding provision of the Election Code that requires electors to sign their formal first name when a diminutive form of the same is obvious.

The objectors in *Flaherty* also challenged signatures on the basis that the addresses the electors listed on the nomination petition did not correspond with their registered addresses. This Court agreed with the objectors that such signatures should have been stricken because the Election Code contained stringent requirements regarding an elector's registration of his address, and an elector's notification to authorities of any change of address. Thus, our decision in *Flaherty* instructs that signatures that differ from the name on the elector's voter registration card in a material way that violates the Election Code should be stricken. We did not hold, however, that a signature is invalid if there is any difference between the elector's signature on a nomination petition and the name that appears on the elector's voter registration card. *See Piccirilli,* 944 A.2d at 842–43 (providing that this Court's decision in "*Flaherty* does not mean that any and all defects in the signature would require that the signature be stricken— only substantial ones"). Because the electors herein signed

obvious shortened versions of their first names, the defects were immaterial and did not invalidate the signatures.

In conclusion, as Candidate was only two names short of acquiring the 300 signatures needed to appear on the ballot and, as ten signatures were struck on the basis of an obvious diminutive form of the name, the Commonwealth Court erred by setting aside his nomination petition and directing the Secretary of the Commonwealth not to certify Candidate in the primary election for state representative. It is for these reasons that this Court entered the order on April 4, 2012, reversing the order of the Commonwealth Court, and directing that Candidate's name be printed on the April 24, 2012 primary election ballot.

Justice ORIE MELVIN did not participate in this opinion.

Chief Justice CASTILLE, Justices SAYLOR, EAKIN, TODD and McCAFFERY join the opinion.