# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Petitions of : 
Mallory B. Scott, Candidate in the : 
Democratic Primary for the : No. 164 M.D. 2016
127th State Legislative District : 
 : Heard: March 16 and 18, 2016
Petition of: Thomas R. Caltagirone :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED:  March 23, 2016**

Thomas R. Caltagirone (Objector) has filed a Petition to Set Aside the Nomination Petition of Mallory B. Scott (Candidate) as a candidate for the Democratic Nomination for the Office of Representative for the 127th Legislative District in the General Primary Election to be held on April 26, 2016.  For the reasons that follow, this Court grants Objector's Petition to Set Aside.

## I.  BACKGROUND

Pursuant to Section 912.1(14) of the Pennsylvania Election Code[1] (Election Code), a candidate for the Office of Representative in the General Assembly must present at least 300 valid signatures of registered and enrolled electors of the political party of the candidate.  On or about February 16, 2016, Candidate filed a

---

[1] Act of June 3, 1937, P.L. 1333, added by Section 2 of the Act of December 12, 1984, P.L. 968, as amended, 25 P.S. § 2872.1(14).

Nomination Petition and a Candidate Affidavit with the Department of State's Bureau of Commissions, Elections and Legislation (Department). The Department issued a "Nomination Petition Rejection Notice" for the reason that the Nomination Petition signature pages were "not copied back to back (2-sided)." (Petition for Writ of Mandamus, ¶ 5, docketed at 74 M.D. 2016.) Candidate filed a "Petition for Writ of Mandamus for the Acceptance of Nomination Petition" (Mandamus Petition) with this Court. The Department did not oppose the Mandamus Petition, so it was granted by the Court, subject to the condition that Candidate file "a sworn affidavit from each circulator of the [N]omination [P]etitions stating that the [P]etitions remained attached, at all times, during circulation . . . ." Scott v. Commonwealth of Pennsylvania, (Pa. Cmwlth., No. 74 M.D. 2016, filed February 18, 2016).

On February 19, 2016, Candidate filed the original Nomination Petition, which comprises 17 signature pages (previously 34 signature pages) containing 427 signatures on 429 signature lines, with supplemental affidavits from the two circulators, Candidate and Luis Negron. The affidavits swore, in relevant part, that "the two sides of each page of the nomination petition/petitions I circulated remained attached, at all times, throughout the period from when I first circulated these pages through the completion of the Affidavit of Circulator on side 2 of each page." (Supplemental Affidavits). Candidate's Nomination Petition was accepted by the Department. Objector, a qualified elector who resides in the 127th Legislative District, timely filed the Petition to Set Aside at issue in this case.

Objector's Petition to Set Aside contains three counts. Count I alleges that 238 signature lines in the Nomination Petition are invalid. Count II alleges that the

2

affidavit submitted by Mr. Negron is false and seeks to have all the signature lines on pages 10 through 16 of the Nomination Petition stricken. Count III alleges that Nomination Petition must be filed in the form prescribed by the Secretary of the Commonwealth and that the individual pages of the Nomination Petition here were not in the required form. On that basis, Objector requests this Court to strike every signature on Candidate's Nomination Petition.

On March 1, 2016, this Court entered a Scheduling and Case Management Order (Scheduling Order), scheduling a hearing on the Petition to Set Aside[2] and imposing certain duties and obligations upon Objector and Candidate. The Scheduling Order directed, *inter alia*, that Objector serve upon Candidate "one digital media device (CD or USB Flash Drive) containing the objections to signature lines in spreadsheet format and a key to the codes used in the spreadsheet"; "secure . . . the presence of a Statewide Uniform Registry of Electors (SURE) system operator at the hearing"; and "arrange to meet with Candidate or [his] representative to review . . . each and every challenged signature line [prior to the hearing]." (Scheduling Order, ¶¶ 1(B), 1(D), 3(A).) The Order further directed both parties to file a stipulation identifying "signature line[s] to be stricken as invalid or for which an objection is to be withdrawn" and directed Candidate to "file a list of all signature lines . . . that are facially defective and that Candidate intends to rehabilitate" and to describe "the manner in which Candidate intends to rehabilitate the signature lines." (Scheduling Order ¶¶ 3(B)(e), 3(C).)

---

[2] The hearing originally scheduled for March 17, 2016, was rescheduled for March 16, 2016.

3

Candidate and Objector could not reach an agreement on any signature lines to be stricken or withdrawn nor did Candidate file a list of signature lines to be rehabilitated prior to the hearing. In accordance with the Scheduling Order, Objector filed a witness list. Candidate did not file a witness list. The hearing convened on March 16, 2016 at 9:30 a.m. After hearing arguments and testimony on Counts II and III of Objector's Petition to Set Aside, this Court proceeded to a line-by-line review of the 238 challenged signature lines.

## II. DISCUSSION

The Courts have long held that the Election Code must be construed liberally "so as not to deprive an individual of his right to run for office, or the voters of their right to elect a candidate of their choice." Nomination Petition of Ross, 190 A.2d 719, 720 (Pa. 1963); accord In re Nomination Petition of Flaherty, 770 A.2d 327, 331 (Pa. 2001). Furthermore, "the purpose of the Election Code is to protect, not defeat, a citizen's vote." Dayhoff v. Weaver, 808 A.2d 1002, 1006 (Pa. Cmwlth. 2002). Thus, nomination petitions are presumed to be valid, and it is the objector's heavy burden to prove that a candidate's nomination petition is invalid. In re Nomination Petition of Shimkus, 946 A.2d 139, 141 (Pa. Cmwlth. 2008) (Cohn Jubelirer, J., single judge op.). As recently reaffirmed by our Supreme Court:

> A party alleging defects in a nominat[ion] petition has the burden of proving such defects, and, where the court is not convinced that challenged signatures are other than genuine, the challenge is to be resolved in favor of the candidate. Further, the Election Code should be liberally construed to protect a candidate's right to run for office and the voters' rights to elect the candidate of their choice.

4

In re Nomination Petition of Gales, 54 A.3d 855, 857 (Pa. 2012) (citations omitted).

Nevertheless, the Supreme Court has consistently "recognized that the signature requirement serves as 'a means of preventing forgery and assuring that each elector personally signs the petition with an understanding of what he is signing.'" Id. at 54 A.3d at 859 (quoting Flaherty, 770 A.2d at 332). This Court is, therefore, mindful that a balance must be struck between the liberal purposes of the Election Code and "the provisions of the [E]lection [C]ode relating to . . . nominati[on] petitions . . . [which] are necessary . . . to prevent fraud and to preserve the integrity of the election process." Shimkus, 946 A.2d at 154 (citation omitted). This Court is "entrusted with the responsibility of protecting the Commonwealth's compelling interest in preserving the integrity of the election process." In re Nomination Papers of Carlson, 430 A.2d 1210, 1212 (Pa. Cmwlth. 1981) (Crumlish, J., single judge op.). The Supreme Court may reverse this Court's order concerning the validity of challenges to a nomination petition only if our findings of fact are not supported by substantial evidence, if we abused our discretion, or if we committed an error of law. In re Nomination Papers of Nader, 858 A.2d 1167, 1177 (Pa. 2004).

During the hearing on the matter, this Court was confronted with a series of signature line challenges that raised two unsettled legal issues. First, 12 signature lines were signed by electors with names that differed from the names listed on their voter registration cards insofar as the elector signed the Nomination Petition with one surname and the voter registration card for the elector contained two surnames. Each of these electors had traditional Spanish language surnames.

5

Objector argued that these signature lines were invalid because the names listed on the Nomination Petition did not match a name in the voter registration system. Second, 15 otherwise qualified electors signed the Nomination Petition and listed addresses of residence that differed from the addresses listed for the electors on their voter registration cards. Objector argued that these signature lines must be stricken pursuant to the reasoning in this Court's decision in In re Nomination Petition of White (Pa. Cmwlth., No. 446 C.D. 2015, filed April 17, 2015) (Cohn Jubelirer, J., single judge op.), slip op. at 11. We shall address these two legal issues preliminarily.

### A. Multiple Surnames

The voter registration cards of 12 individuals who signed Candidate's Nomination Petition listed traditional Spanish language surnames where the paternal surname is combined with the maternal surname to form a single two-name surname. See generally Yvonne M. Cherena Pacheco, Latino Surnames: Formal and Informal Forces in the United States Affecting the Retention and Use of the Maternal Surname, 18 T. Marshall L. Rev. 1, 9 (1992) (discussing the tradition of Latin American names). Each of these electors signed the Nomination Petition by using only the first of the two surnames. In determining whether a signature on a Nomination Petition is valid, we first turn to the language of the statute. Section 908 of the Election Code provides in relevant part:

> Each signer of a nomination petition shall sign but one such petition for each office to be filled, and shall declare therein that he is a registered and enrolled member of the party designated in such petition. . . . He shall add his residence, giving city, borough or township, with street and number, if any, and shall legibly print his name and add the date of signing, expressed in words or numbers.

6

25 P.S. § 2868.

The Supreme Court in Gales interpreted Section 908 of the Election Code and noted that the provision "does not require that an elector sign his formal first name" and that "the language directing an elector to 'sign' and print his 'name' is ambiguous, as it does not delineate expressly what form of an elector's name is acceptable." Gales, 54 A.3d at 859. The Supreme Court resolved the ambiguity by looking at the purpose of the statute, which is to prevent forgery and assure "that each elector personally signs the petition with an understanding of what he is signing." Id. (quoting Flaherty, 770 A.2d at 332). The Supreme Court held that signing with a diminutive first name is acceptable

> because the language of Section 908 does not affirmatively preclude the use of an elector's diminutive first name, the use of an obvious diminutive first name does not compromise the integrity of the election process, and because the Election Code is to be liberally construed in favor of the candidate, we conclude that the Commonwealth Court erred by striking the signatures reflecting the electors' obvious diminutive first names.

Id.

It is not uncommon for an individual with two Spanish language surnames to be referred to by only one surname. See United States v. Alvarez-Ulloa, 784 F.3d 558, 562 n.1 (9th Cir. 2015) (noting the Court's "ordinary convention is to refer to litigants with hyphenated Hispanic surnames by the name appearing first in the hyphenated series"). See also Cherena Pacheco, 18 T. Marshall L. Rev. at 14 (noting the societal pressures in the United States pushing Spanish speaking women to drop second surnames). Therefore, where, through a comparison of the relevant portion of a signature and address listed on a nomination petition with

7

voter registration cards, it is obvious that an individual is a valid elector, the signature should not be stricken. This Court concludes that the use of one Spanish language surname instead of two surnames in this context does not compromise the integrity of the election process so long as (1) the address on the signature lines matches the voter registration card; and (2) the portions of the signature that appears on both the registration card and the petition appear to be of the same hand. In so concluding, the Court "reaffirm[s] the principle that in cases unlike the instant case, where it is not obvious that the signature on the nomination petition reflects the same name that appears on the elector's voter registration card, absent other evidence, the signature should be stricken." Gales, 54 A.3d at 859-60.


## B. Elector Not Registered at Address

Objectors argue that 38 individuals who signed Candidate's Nomination Petition are not registered at the address listed on the Nomination Petition. Review of these signature lines revealed that 15 of these 38 individuals were registered voters in the 127th Legislative District and listed different addresses, also within the 127th Legislative District, on the Nomination Petition.

Section 908 of the Election Code requires all signers of nomination petitions to "add his residence, giving city, borough or township, with street and number, if any . . . ." 25 P.S. § 2868. The traditional rule, expressed by our Supreme Court in Flaherty, was that "absent extraordinary circumstances, electors who declare a residence at an address different than the address listed on their voter registration card are not qualified electors at the time they sign a nomination petition unless they have completed the removal notice required by the Voter Registration Act." Flaherty, 770 A.2d at 333. This interpretation of the Election Code was intended

8

to ensure that an elector signing a nomination petition is actually registered and living in the correct district. In re Morrison-Wesley, 946 A.2d 789, 795-96 (Pa. Cmwlth.), aff'd sub nom. In re Nomination Petition of Morrison-Wesley, 944 A.2d 78 (Pa. 2008).

More recently, this Court has adopted a more forgiving interpretation of the Election Code. See, e.g., In re Nomination Papers of Robertson (Pa. Cmwlth. No. 507 M.D. 2012, filed September 20, 2012), slip op. at 13.[3] Considering Flaherty's holding to have relied on the text of the Voter Registration Act in effect at that time, which provided that voters who moved within the county could not vote in elections unless they notified the authorities of their new address no later than 30 days preceding an election,[4] the Court looked instead to a subsequently enacted Voter Registration Act. Under the subsequent Act, a voter who has moved within the same county is entitled to vote in one election at his old polling location even without notifying the authorities of his or her move. Section 1501(b)(2) of the 2002 Act, 25 Pa. C.S. § 1501(b)(2). Based on the subsequent Act and recent developments in federal election law, the panel held that "the mere fact that the address [listed on a voter registration card] does not match [the address written on the nominating papers] does not invalidate the signature." In re Nomination Papers

---

[3] Pursuant to Section 414 of the Commonwealth Court Internal Operating Procedures, unreported opinions of a panel of the Commonwealth Court, if issued after January 15, 2008, may be cited for "persuasive value, but not as binding precedent." 210 Pa. Code § 69.414(a).

[4] 25 Pa. C.S. §§ 961.901-961.902, repealed by the Act of January 31, 2002, P.L. 18, No. 3, § 5(2).

9

of Robertson (Pa. Cmwlth. No. 507 M.D. 2012, filed September 20, 2012), slip op. at 13.[5]  According to the Court:

> [T]he Election Code requires only that the signer write his current residence address and does not state that he must write the address at which he is registered or that his present residence must match his registered address.  Where the Election Code does not affirmatively require that information on a nomination petition or paper match the voter registration record and the difference does not compromise the integrity of the election process, signatures cannot be stricken based on a difference from the voter registration records.

Robertson, slip op. at 25-26.

Balancing the competing concerns, in the Election Law of ensuring that an elector signing a nomination petition is actually registered and living in the correct district, and the new Voter Registration Act, of allowing individuals who have moved without notifying the authorities to continue to vote, is complicated.  It is not surprising, then, that this Court's jurisprudence has not been entirely consistent.  Compare In re Payton, 945 A.2d 279, 286 n.3 (Pa. Cmwlth.), review denied, order aff'd, 945 A.2d 162 (2008), abrogated on other grounds by In re Stevenson, 40 A.3d 1212 (Pa. 2012) (not striking signature lines that listed their residences with addresses in the district even though the addresses differed from the registration addresses); In re Nomination Petition of Brown, 846 A.2d 783, 787 (Pa. Cmwlth. 2004) (not allowing amendment to addresses listed on a nomination petition because "to do so would be pointless" given that different addresses within the political district has "no legal effect on the signers' status as a qualified and

---

[5] Pursuant to Section 414 of the Commonwealth Court Internal Operating Procedures, unreported opinions of a panel of the Commonwealth Court, if issued after January 15, 2008, may be cited for "persuasive value, but not as binding precedent."  210 Pa. Code § 69.414(a).

registered elector"); with In re Nomination Petition of Vodvarka, 994 A.2d 25, 30 (Pa. Cmwlth. 2010) (Leavitt, J., single judge op.) (applying Flaherty's extraordinary circumstances test); White, slip op. at 13 (applying the "extraordinary circumstances" test of Flaherty and holding that a recent move within a district is an extraordinary circumstance).

Given these competing concerns, we are going to strike the following balance which we believe is well-supported by the statutes and case law. We will not strike a signature where the only defect is that the elector is registered at a different address within the district than the in-district address written on the nomination petition. The fact that an elector moves within the district without immediately updating voter registration information, by itself, does not render the elector unqualified to sign a nomination petition, as long as the signature is consistent with the signature on the registration card.

### C. Signature Line Challenges

With the foregoing in mind, this Court conducted an extensive line-by-line review of all 238 challenged signature lines. In reviewing the challenges, this Court was assisted by the testimonies of Karen J. Barsoum of Berks County Election Services, who testified as a SURE system operator, and Objector's expert, William J. Ries, a forensic documents examiner who was qualified and accepted by the parties as an expert in document examination and handwriting analysis.[6]

---

[6] Mr. Ries' curriculum vitae was submitted into evidence as Exhibit P-1.

11

During the hearing, Candidate agreed that 106 signature lines[7] were not valid where review of the registration data showed, *inter alia*, that the elector was not a registered voter in the district, the elector did not include a date of signing,[8] the elector was not registered as a Democrat, or that Candidate or a third party assisted the elector by filing in portions of the electors' address or date of signing.

The Court reviewed the 12 signature lines where the elector signed with one Spanish language surname instead of the two surnames listed on their respective voter registration cards.[9] Upon thorough examination of each signature and address, and based upon the explanation of this ruling previously set forth, the Court concluded that it is obvious that all 12 signatures were valid. The signatories were registered at the address on the Nomination Petition, and the signatures were consistent. The Court also reviewed each of the 38 signature lines where the address listed on the Nomination Petition did not match the address for the named

---

[7] The following signature lines were struck by agreement of Candidate: page 1, lines 3, 12, 26, and 27; page 2, lines 1, 7, 16, 19, 25, and 27; page 3, lines 6, 14, 16, 26, and 28; page 4, lines 10, 11, 20, 24, and 26; page 5, lines 6, 11, 13, 14, and 16; page 6, lines 8, 15, 18, 19, 20, and 21; page 7, lines 2, 5, 11, 16, and 26; page 8, lines 21, and 24; page 9, lines 9, 13, and 22; page 10, lines 7, 8, 11, 13, 16, 17, 20, 21, and 24; page 11, lines 1, 2, 4, 7, 15, 18, 20 and 27; page 12, lines 7, 10, 14, 16, 20, 21, 23, 25, and 26; page 13, lines 1, 2, 3, 4, 5, 6, 7, 8, 15, 16, 17, 18, 19, and 20; page 14, lines 4, 5, 7, 9, 10, 13, and 14; page 15, lines 2, 3, 4, 5, 6, 9, and 11; page 16, lines 1, 4, 5, 8, 9, 10, 11, 17, and 18; and page 17, lines 2, 5, and 8.

[8] While the signature lines that included an incomplete date of signing were not struck pursuant to In re Nomination Papers of Robertson, 55 A.3d 1044, 1045 (Pa. 2012), Candidate conceded all signature lines where the date of signing was not added or where the elector wrote their zip code in the box designated for the date of signing.

[9] These valid signatures are found on page 1, line 15; page 2 lines 10, 11, and 28; page 4, line 25; page 5, lines 4 and 25; page 6, line 13; page 7, line 28; page 12, lines 3, and 5; and page 14, line 2.

person on their respective voter registration cards. On 15 of these 38 signature lines, the elector listed an address on the Nomination Petition within the district that differed from the in-district address listed on their respective voter registration cards. After review, we concluded that the 15 signatures at issue written on the Nomination Petition were consistent with the signatures written on the voter registration cards, and appeared to be written in the same hand. Based on the explanation previously set forth, this Court did not strike the signatures of these 15 electors, subject to Objector's ongoing objection.[10] For the same reasons, the Court struck the remaining 23 signature lines that were signed by individuals that listed in-district residences that differed from the address at which they were registered because the evidence showed that the elector was not registered in the district at the time of signing or the signatures written on the Nomination Petition were not consistent with the individual's signature on their voter registration cards.[11]

Objector argued that 20 signature lines on Candidate's Nomination Petition are invalid because the elector was not registered in the Democratic Party at the time of signing or not registered to vote at all. Section 907 of the Election Code, 25 P.S. § 2867, states that nomination petitions must be signed by "duly registered and enrolled members of such party who are qualified electors of the State, or of

---

[10] These valid signatures are found on page 2, lines 3 and 9; page 3, line 2; page 5, line 10; page 6, line 24; page 7 lines 6 and 7; page 10, line 14; page 11, line 30; page 12, lines 8 and 11; page 14, line 3; page 15, lines 1 and 10; page 16 line 3.

[11] These signatures are found on page 1, line 13; page 3, lines 10, 29, and 30; page 4 line 3; page 5, line 19; page 7, lines 9, 10, 15, and 20; page 8, line 11; page 9, lines 7, 14, 15, and 21; page 11, line 8; page 12, line 26; page 13, lines 9, 10, and 11; page 14, lines 1, 8, and 12; and page 16 line 2.

the political district, as the case may be." Because the evidence showed that these individuals were not registered voters of the Democratic Party at the time of signing, the Court agreed with Objector and struck these 20 signatures.[12]

Next, Objector alleged that 5 signatures do not match the signatures found on the voting cards. After review, the Court concluded that 3 signatures were printed on the Nomination Petition instead of being signed and there was no evidence that the elector intended to sign the Nomination Petition with a printed signature.[13] See Flaherty, 770 A.2d at 333 (concluding "that in stating that a person must 'sign' the nomination petition, the General Assembly intended that a person make that insignia that the person uses to represent herself, rather than print her name"). Additionally, the Court concluded that 2 signatures bore no resemblance to the signatures written on the voter registration cards and were, therefore, invalid. Id.

Finally, Objector alleged that 6 signatures are invalid because the signatures or other line information were written in the hand of another. After review, the Court found that the signature on page 8, line 1 is written by the hand of the elector that appears in the subsequent signature line, and concluded that this signature is invalid. Morrison-Wesley, 946 A.2d at 796. Further, the Court found that the

---

[12] The following signatures are stricken because the elector was not registered to vote or registered to vote but not affiliated with the Democratic Party: page 1, lines 13 and 16; page 2 lines 4, 13, 17, 18, 23; page 3, line 11; page 4, lines 8, 17, and 18; page 5, lines 26 and 27; page 6, line 29; page 7, lines 18, 21, and 23; page 9, line 24; page 11, line 17; and page 12, line 12.

[13] These signatures lines include page 4, line 13; page 5, line 20; and page 9, line 5.

14

addresses in 5 signature lines were written by someone other than the signer.[14] We were therefore compelled to strike these 5 signature lines. In re Silcox, 674 A.2d 224, 225 (Pa. 1996).

### III. CONCLUSION

In sum, Candidate agreed that 106 signature lines should be stricken and the Court struck an additional 54 signature lines, leaving Candidate with 269 signatures on his Nomination Petition. Because Candidate's Nomination Petition contains less than 300 valid signatures as required by Section 912.1(14) of the Election Code, this Court grants the Petition to Set Aside.[15]

**RENÉE COHN JUBELIRER, Judge**

---

[14] The Court's finding in this regard includes the address information on page 4, lines 5, 14, and 28; page 5, line 18; and page 7, line 22.

[15] Because we conclude that Candidate has not submitted the required 300 signatures, we need not address the issues raised in Counts II and III of the Petition to Set Aside.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Petitions of : 
Mallory B. Scott, Candidate in the : 
Democratic Primary for the :   No. 164 M.D. 2016
127th State Legislative District : 
  :
Petition of: Thomas R. Caltagirone : 

## **O R D E R**

**NOW**, March 23, 2016, after hearing, the "Petition to Set Aside Nomination Petitions of Mallory Scott, Candidate in the Democratic Primary for the 127th State Legislative District" in the above-captioned matter is **GRANTED**.  The Secretary of the Commonwealth is directed to remove the name of Mallory B. Scott as a Candidate for the Democratic Nomination for the Office of Representative in the General Assembly for the 127th Legislative District from the April 26, 2016 General Primary Election ballot.  The Chief Clerk is directed to send a copy of this Order to the Secretary of the Commonwealth.  The parties shall bear their own costs.

 

 

**RENÉE COHN JUBELIRER, Judge**