# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In Re:  Nomination Papers of | : |
| Constitution Party, James N. Clymer, | : |
| Steven E. Sylvester, Justin L. Magill, | : |
| Alan R. Goodrich, Sr., Troy Bowman, | :  No. 382 M.D. 2024 |
| and Bernard Selker | :  Heard:  August 13, 2024 |
| | : |
| Objection of:  Ashley Boop | : |

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge


OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED:  August 23, 2024

Before the Court is the Petition to Set Aside the Nomination Papers (Papers) of the Constitution Party (Petition) wherein Ashley Boop (Objector) asserts that the entire slate of candidates being nominated by the Constitution Party (Party) must be set aside because not everyone listed on the Papers filed a candidate affidavit, a fatal defect requiring striking of the entire slate of candidates, even those who filed candidate affidavits, from the ballot.  The Party disagrees that any candidates must be struck from the ballot.  It asserts that the lack of candidate affidavits at issue is the result of the Pennsylvania Department of State's (Department) erroneous rejection of the Papers as to James N. Clymer and Steven E. Sylvester, who are identified in the Papers as the Party's candidates for President and Vice President, and 19 individuals identified in the Papers as the Party's presidential electors, due to the Party's failure to present candidate affidavits for 4 of the 19 presidential electors.  Following the filing of briefs and/or supplemental memoranda of law, a hearing, and a review of the law, the Court dismisses the Petition as to Clymer and Sylvester as moot based on the decision of a panel of this Court in *Clymer v. Schmidt* (Pa.

Cmwlth., No. 876 M.D. 2024, filed August 23, 2024), and denies the Petition as to the remaining candidates, whose names shall remain on the ballot.

## I.    BACKGROUND/FACTS[1]

Objector filed the Petition on August 8, 2024, asserting that she is a qualified elector and that the entire slate of candidates for the Party must be struck from the ballot due to the lack of candidate affidavits for all those named therein. This Court, by Order dated August 9, 2024, scheduled a hearing on the Petition for August 13, 2024, and directed the parties to file, among other items, witness lists and briefs prior to the hearing. On August 13, 2024, the Court held the hearing at which the following facts were elucidated.

At around 10:00 a.m. on August 1, 2024, the last day for filing nomination papers, Alan R. Goodrich (Goodrich), the Pennsylvania chairman for the Party, presented the Papers to the Department's Bureau of Elections (Bureau) for filing. Attached to the Papers were candidate affidavits for Clymer, Sylvester, Justin L. Magill (candidate for Attorney General), Goodrich (candidate for Auditor General), Troy Bowman (candidate for Treasurer), and Bernard Selker (candidate for United States Senator). The Papers also named 19 individuals as the Party's presidential electors, but no candidate affidavits were submitted for those individuals.

---

[1] The Background and Facts are derived from the Petition, as well as from the testimony of Alan R. Goodrich and Clymer, who testified under oath before the Court on August 13, 2024. The Court finds these individuals' testimony credible based on their demeanor. As the Petition is within this Court's original jurisdiction, the Court is the fact finder and "has exclusive authority to weigh the evidence, make credibility determinations[,] and draw reasonable inferences from the evidence presented." *In re Nomination Papers of Amato* (Pa. Cmwlth., No. 1406 C.D. 2017, filed Oct. 23, 2017), slip op. at 8-9 (alteration in original) (quotation omitted). In doing so, this Court may believe all, part, or none of the evidence presented. *Id.*

The Bureau accepted the Papers as to Magill, Goodrich, Bowman, and Selker, but, initially, refused to accept the Papers as to Clymer, Sylvester, and the 19 presidential electors. It subsequently took those Papers for a period of time and then returned them, indicating that the Papers would not be accepted as to Clymer and Sylvester or the presidential electors because the Party had not submitted candidate affidavits for the presidential electors. Thereafter, throughout the day, the Party worked to obtain candidate affidavits for the presidential electors but was only able to collect and have present for timely filing at the Bureau in Harrisburg 15 of the 19. Goodrich attempted to present the 15 candidate affidavits, but the Bureau would not accept less than the 19. And, because there were fewer than 19 presidential electors with candidate affidavits, the Bureau issued a formal rejection of the Papers as to Clymer and Sylvester, and the presidential electors, and returned Clymer's and Sylvester's candidate affidavits to Goodrich.

Goodrich and Clymer, who is the Party's national chairman, both testified that Clymer and Sylvester are what is known as "placeholder" candidates who are used during the circulation of nomination papers, which begins prior to the selection of the national nominees for President and Vice President.[2] The nominating papers are filed with the Department with the "placeholder" candidates, who will later

---

[2] To the extent Objector's counsel cross-examined Clymer as to his true "intent" or "desire" to run as the Party's Presidential Candidate when he was admittedly only a placeholder candidate as a means to challenge Clymer's credibility, the Court was not persuaded that this line of questioning made Clymer less credible. While the affidavit (and declaration filed if a notarization is not possible) does reference the affiant's "desire" to be a candidate for a particular position, (*see* Exhibit 2 of Exhibit A; Exhibit B), the Court does not read this as meaning that placeholder candidates are somehow being untruthful when they sign the affidavit. Rather, the Court interprets that language as reflecting a placeholder candidate's desire to be the candidate for that position until such time as they withdraw and a substituted candidate replaces them, as is the nature of the political body nomination process. Indeed, the use of placeholder candidates has been recognized by the Supreme Court as "a permissible feature of the nominating process for political bodies." *See In re Scroggin*, 237 A.3d 1006, 1019 (Pa. 2020).

3

withdraw their candidacy and the national nominees will be substituted for them. At the time of the hearing, Clymer and Sylvester had already filed their withdrawal notices with the Department, and the Party was in the process of submitting what was necessary to substitute the national nominees for Clymer and Sylvester. Clymer noted that the Bureau had indicated it would accept at least the withdrawals tentatively pending the resolution of the litigation.

Clymer explained that candidate affidavits for the presidential electors were not collected and presented because they were not aware that the Bureau was taking the position that presidential electors were "candidates" required to file those affidavits. Because presidential electors' names do not appear on the ballot, Clymer indicated that the Party believed they were not "candidates." He indicated that while they had all 19 candidate affidavits signed, they were unable to get 4 of them to Harrisburg by the deadline due to them being from the Northwestern part of the state. According to Clymer, the Party had nominees for President and Vice President in Pennsylvania in 2004 and 2016, and he did not recall having to file candidate affidavits for the presidential electors. However, he admitted to not being certain of that fact. Clymer acknowledged on cross-examination that the Party's national nominees for President and Vice President were chosen in late April 2024 but explained that, by then, the process for collecting signatures on the nomination papers had already begun. Clymer indicated it is a difficult and burdensome process to obtain candidate affidavits from presidential electors, as is the entire nominating paper process.

The parties provided closing arguments in support of the positions. During that argument, the parties also stipulated that the Party did have candidate affidavits for Clymer and Sylvester at the Bureau ready to be filed on August 1, 2024. Thus,

4

the real issue is the lack of candidate affidavits for all 19 presidential electors and the impact this has on Clymer and Sylvester, as well as on the other candidates whose names Objector seeks to have struck from the ballot. At the end of the hearing, the Court provided parties with the opportunity to file supplemental memoranda of law addressing any additional issues if they chose to do so.[3]

## II. DISCUSSION

### A. *The Relevant Code Provisions*

At issue here is the nomination process of candidates by political bodies, which is governed, in part, by Section 951 of the Pennsylvania Election Code (Election Code), 25 P.S. § 2911.[4] It is a process that is different, in some regards, from that used for the nomination of candidates by political parties. Part of this process is the circulation and filing of nomination papers identifying the various individuals for which electors signed to be the candidates for that political body. *See* 25 P.S. § 2911(a), (b), (c). Unlike political parties, political bodies are permitted to circulate nomination papers that contain multiple candidates, rather than each

---

[3] The Party filed several "praecipes." The first notified the Court of subsequent actions taken by the Party, including that Clymer and Sylvester would "be withdrawing as political candidates" and had "filed" Withdrawal Notices with the Department. (Praecipe to Switch Candidates at 1.) The second submitted to this Court the Party's applications to substitute the Party's national candidates for Clymer and Sylvester. Objector filed an Application to Strike the praecipes as being impermissible. The Party filed an Answer to the Application to Strike, indicating that the praecipes were to satisfy their obligation to notify the Court that the Withdrawal Notices and the Substitution Notices had been submitted to the Department in the timeframe set forth in the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591, and were being held by the Department "pending the [] Court's disposition in the pending [m]andamus action" in *Clymer v. Schmidt* (Pa. Cmwlth., No. 376 M.D. 2024, filed August 23, 2024). (Answer to the Application to Strike at 4.) The Court considers these praecipes as providing notice of the Party's subsequent actions with the Department and, therefore, the Application to Strike is denied.

[4] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2911.

5

candidate having to individually obtain the requisite number of signatures. *See* 25 P.S. § 2911(c) (stating that "[m]ore than one candidate may be nominated by one nomination paper and candidates for more than one office may be nominated by one nomination paper").

In addition to the actual signature pages of the nomination papers, Section 951(e) of the Election Code requires that

> [t]here **shall be appended to each nomination paper offered for filing an affidavit of each candidate nominated therein**, stating--(1) the election district in which he resides; (2) the name of the office for which he consents to be a candidate; (3) that he is eligible for such office; (4) that he will not knowingly violate any provision of this act, or of any law regulating and limiting election expenses, and prohibiting corrupt practices in connection therewith; (5) that his name has not been presented as a candidate by nomination petitions for any public office to be voted for at the ensuing primary election, nor has he been nominated by any other nomination papers filed for any such office; (6) that in the case where he is a candidate for election at a general or municipal election, he was not a registered and enrolled member of a party thirty (30) days before the primary held prior to the general or municipal election in that same year; (7) that, in the case where he is a candidate for election at a special election, he is not a registered and enrolled member of a party; and (8) that he is not a candidate for an office which he already holds, the term of which is not set to expire in the same year as the office subject to the affidavit.

25 P.S. § 2911(e) (emphasis added).

The content of nomination papers is set forth in Section 952 of the Election Code, which relevantly provides:

> **All nomination papers shall specify**--(a) **The name** or appellation **of the political body which the candidates nominated thereby represent**, expressed in not more than three words, **and in the case of electors for President and Vice-President of the United States**, **the names of the candidates for President and Vice-President of such political body**; (b) the name of each candidate nominated therein, his profession, business or occupation, if any; and his place of residence

6

with street and number, if any; (c) the office for which such candidate is nominated; and (d) the names and addresses of the committee, not to be less than three (3) nor more than five (5) persons, authorized to fill vacancies, if any shall occur. . . .

25 P.S. § 2912 (emphasis added). Finally, the time, place, and manner of filing the nomination papers with the Secretary for candidates for statewide office, as is the case here, is provided in Section 953(a) of the Election Code, which states in relevant part: "**Nomination papers for candidates for presidential electors**, United States Senators, Representatives in Congress, and State offices, including senators, representatives and judges of courts of record, shall be filed with the Secretary of the Commonwealth." 25 P.S. § 2913(a) (emphasis added).

### B. Parties' Arguments

Objector argues that under the above language, particularly the statement in Section 951(e) that "there shall be appended to **each nomination paper offered** for filing an **affidavit of each candidate nominated therein**," 25 P.S. § 2911(e), if a political body submits a single set of nomination papers for a "slate" of candidates, the nomination papers cannot be accepted for **any** candidate if any one of those required to file a candidate affidavit fails to do so. According to Objector, it is apparent from the Supreme Court's decision in *In re Scroggin*, 237 A.3d 1006 (Pa. 2020), that the candidate affidavit requirement is an important anti-fraud measure that must be strictly construed and that the failure to file a timely candidate affidavit is a fatal defect. In Objector's view, the electors who signed the Papers did so with the understanding that all of those candidates would be on the ballot, thereby triggering the anti-fraud purpose of Section 951(e), and if any of them were to fall, all of them must fall.

7

The Party argues that there is nothing in the Election Code that defines candidate to include a presidential elector for a political body, the name of whom does not appear anywhere on the ballot. Because presidential electors are not candidates, they need not file candidate affidavits in order for the nomination papers to be accepted as to them. Accordingly, the Party argues, the Bureau erred in rejecting all of the presidential electors and, relatedly, Clymer and Sylvester's nomination papers, and in taking an all or nothing stance as to the presidential electors, an issue that will be resolved in the mandamus action. The Party maintains that, as to this matter, if the Bureau is ordered in the mandamus action to accept the nomination papers as to those it had previously objected, the Objection necessarily fails. And, even if the Bureau is not so ordered, there is no basis for the striking the non-presidential/vice-presidential candidates, who admittedly filed candidate affidavits. There being valid, timely candidate affidavits, the Party asserts, the anti-fraud purpose is met as to these candidates.

Additionally, the Party argues that if the presidential electors are required to file candidate affidavits, then the process violates the United States and Pennsylvania Constitutions because it treats political bodies differently than political parties by imposing a requirement, recognized as an anti-fraud measure, on the former and not on the latter. In its supplemental filing, the Party asserts the same arguments as those raised by Clymer and Sylvester in *Clymer* to challenge the candidate affidavit requirement.[5] *See Clymer*, slip op. at 7-9.

Objector argues that presidential electors for political bodies are candidates under the Election Code and, as such, are required to file a candidate affidavit. If no such affidavit is filed, there is a fatal defect in the nomination papers and those

---

[5] The Party, represented by the same counsel as Clymer and Sylvester, submitted the same brief to the Court as Clymer and Sylvester filed in *Clymer*.

papers must be rejected as to all candidate named therein, including those who have filed their own candidate affidavits. Objector's supplemental filing expressly incorporates the brief and arguments filed by Secretary of the Commonwealth (Secretary) in *Clymer*. *See id.*, slip op. at 9-13.

### C. Analysis

In reviewing the Petition, the Court is mindful that that it must be guided by the principle that "the Election Code [is to] be liberally construed so as not to deprive an individual of [the] right to run for office or the voters of their right to elect the candidate of their choice." *In re Nom. Pet. of Wesley*, 640 A.2d 1247, 1249 (Pa. 1994); *Nom. Pet. of Ross*, 190 A.2d 719, 720 (Pa. 1963). The Court recognizes that "the purpose of the Election Code is to protect, not defeat, a citizen's vote." *Dayhoff v. Weaver*, 808 A.2d 1002, 1006 (Pa. Cmwlth. 2002). Our Supreme Court has explained:

> A party alleging defects in a nominat[ion] p[aper] has the burden of proving such defects . . . . Further, the Election Code should be liberally construed to protect a candidate's right to run for office and the voters' rights to elect the candidate of their choice.

*In re Nom. Pet. of Gales*, 54 A.3d 855, 857 (Pa. 2012) (citations omitted), *abrogated on other grounds by In re Nom. Pet. of Vodvarka*, 140 A.3d 639 (Pa. 2016), *overruled on other grounds by statute as recognized by In re Nom. Pet. of Major*, 248 A.3d 445, 454 (Pa. 2021).

Notwithstanding the recognized liberal construction of the Election Code, "the provisions of the [E]lection [Code] relating to the form of nominat[ion] [papers] and the accompanying affidavits are not mere technicalities but are necessary measures to prevent fraud and to preserve the integrity of the election process." *In*

*re Nom. Pet. of Cianfrani*, 359 A.2d 383, 384 (Pa. 1976); *see also In re Nom. Pet. of Shimkus*, 946 A.2d 139, 159 (Pa. Cmwlth. 2008) (Cohn Jubelirer, J.) (single-judge op.) (same). The Supreme Court has consistently recognized the Election Code's "requirements of sworn affidavits are to insure the legitimacy of information crucial to the election process." *In re Cianfrani*, 359 A.2d at 384; *see also In re Scroggin*, 237 A.3d at 1019 (same). Accordingly, the policy to liberally construe the language of the Election Code cannot be distorted to emasculate those requirements necessary to assure the integrity of the election process. *Id.* This Court is, therefore, mindful of the need to balance the liberal purposes of the Election Code and "the provisions of the [E]lection [C]ode relating to . . . nominati[on] [papers] . . . [which] are necessary . . . to prevent fraud and to preserve the integrity of the election process." *In re Nom. Pet. of Scott*, 138 A.3d 687, 692 (Pa. Cmwlth. 2016) (Cohn Jubelirer, J.) (single-judge op.)[6] (alterations in original) (citation and internal quotation marks omitted). This Court is "entrusted with the responsibility of protecting the Commonwealth's compelling interest in preserving the integrity of the election process." *Id.* (citation and internal quotation marks omitted).

In *In re Scroggin*, the Supreme Court addressed a situation similar to this one, albeit not one involving the lack of candidate affidavits for all presidential electors. Nevertheless, it examined the candidate affidavit process for political bodies and explained as follows:

---

[6] Pursuant to Pennsylvania Rule of Appellate Procedure 126(c)(1), "[a] reported single-judge opinion in an election law matter filed after October 1, 2013, may be cited as binding precedent only in an election law matter." Pa.R.A.P. 126(c)(1). Reported, single-judge opinions otherwise may be considered persuasive authority. Pa.R.A.P. 126(c)(2). The Court's Internal Operating Procedures provide that "[a] reported opinion of a single Judge filed after October 1, 2013, in an election law matter may be cited as binding precedent in an election law matter only." 210 Pa. Code § 69.414(d).

10

One of the Election Code's critical anti-fraud mechanisms is the longstanding requirement that a candidate "make affidavit of facts pertinent to his candidacy," a mandate that predates the [Election] Code by more than two decades. *Winston v. Moore*, . . . 91 A. 520, 523 ([Pa.]1914). As this Court previously has explained:

> [T]he provisions of the election laws relating to the form of nominating petitions and the accompanying affidavits are not mere technicalities but are necessary measures to prevent fraud and to preserve the integrity of the election process. The requirements of sworn affidavits are to insure the legitimacy of information crucial to the election process. Thus, the policy of the liberal reading of the Election Code cannot be distorted to emasculate those requirements necessary to assure the probity of the process.

[*In re*] *Cianfrani*, 359 A.2d at 384. The purpose of this provision as applied to nomination papers is to identify and disqualify so-called "sore loser" candidacies, i.e., those individuals who unsuccessfully attempted to secure the nomination of a political party before filing nomination papers as a candidate of a political body. *See In re Nom*[.] *Paper of Cohen*, . . . 225 A.3d 1083, 1093-94 ([Pa.] 2020) (Wecht, J., dissenting) (tracing the legislative history of the Commonwealth's "anti-party raiding" prohibitions). To that end, it has long been the case that a candidate's failure to present and file an affidavit of candidacy with his or her nomination paper is a fatal defect necessitating its rejection. *Brown v. Finnegan*, . . . 133 A.2d 809, 813 ([Pa.] 1957) (holding that a candidate for judicial office by nomination paper who did not make and file an affidavit in conformity with the requirements of the Election Code was not permitted to be added to the general election ballot).

The Election Code affords the Department . . . no discretion to accept a facially deficient nomination paper when presented for filing. When a "nomination paper is presented in the office of the Secretary of the Commonwealth [(Secretary)]," it is the duty of the officer receiving said nomination paper to examine it for "material errors or defects apparent on the face thereof, **or on the face of the appended or accompanying affidavits**." [Section 976 of the Election Code, 25 P.S.] § 2936 (emphasis added). If a defect is found, the nomination paper "shall [not] be permitted to be filed." *Id.* Here, it is undisputed that the nomination paper at issue held out Elizabeth Scroggin as the Green

11

Party's intended nominee for President of the United States. Indeed, Scroggin's name alone was included among the more than 700 pages of submitted paperwork as the party's nominee for that office. It is equally undisputed that the Green Party did not submit an affidavit of candidacy for Scroggin at the time the nomination paper identifying her as the party's presidential nominee was presented for filing. The parties have stipulated to this point.

Although the use of a placeholder candidate is a permissible feature of the nominating process for political bodies, the Election Code draws no distinction between temporary candidates and permanent ones. In order to substitute the name of a bona fide nominee of a political body onto the ballot in that manner, a placeholder first must be duly nominated in accordance with the provisions of the Election Code. [*In re*] *Barr*, 956 A.2d [1083,] 1087 [(Pa. Cmwlth. 2008)]. As we have made clear, "the failure to affix an affidavit of the candidate" to a nomination paper constitutes "**a fatal defect**" that "**cannot be cured by subsequent conduct**." [*In re*] *Cianfrani*, 359 A.2d at 384 ([some] emphasis added). By appending [Howie] Hawkins' affidavit to the nomination paper instead of Scroggin's, the Green Party failed to comply with that statutory command.

. . . .

The consequences of the Green Party's deficient filings are clear. In order to effectuate the substitution of one political body candidate for another, two predicates must be satisfied. First, a candidate must be duly nominated by nomination papers properly presented and accepted for filing, along with an original affidavit, in the Office of the Secretary of the Commonwealth. And second, after the nomination, that candidate must either die or formally withdraw by way of a notarized writing filed with the same office. Only when those two events occur may another candidate be substituted. *See Watson* [*v. Witkin*], 22 A.2d[, 1,] 21 [(Pa. 1941)] ("The authorized party committee can make **substituted** nominations **only when the duly nominated candidate of the party dies or withdraws as a candidate**. Before there can be a '**substituted** nomination' there must have been a nomination.") (emphasis in original). Thus, only "full[ ] compli[ance] with the rigors of the Election Code" will suffice to effectuate the nomination and withdrawal of a placeholder. *Barr*, 956 A.2d at 1088. Because full compliance was lacking here, the efforts to substitute Hawkins for Scroggin were ineffectual. Having failed to adhere to the Election Code's express commands, Scroggin could not be considered the Green

12

> Party's duly nominated candidate for President. Scroggin's candidacy, like Gale's, was a nullity, thereby depriving the Green Party's bona fide nominees of the opportunity to access the general election ballot by substitution.

*In re Scroggin*, 237 A.3d at 1018-23 (some footnotes omitted).

With these principles in mind, the Court considers the impact the lack of the candidate affidavits for the presidential electors has on the other candidates listed on the Papers.

### 1. Clymer and Sylvester

Objector challenges the Papers as to Clymer and Sylvester based on a lack of candidate affidavits for all 19 of the Party's presidential elector candidates. The Party asserts, among other arguments, that: these presidential electors do not have to file candidate affidavits as they are not candidates; if they do have to file the affidavits, the lack of affidavits for fewer than 19 of the presidential electors does not impact Clymer, Sylvester, the presidential electors who filed candidate affidavits, or any other candidate nominated by the Party; and if candidate affidavits are required, that requirement is unconstitutional. This Court addressed these arguments in *Clymer*, finding them unpersuasive and denying Clymer and Sylvester's Petition for Writ of Mandamus, which sought an order directing Secretary to accept the Papers that had been rejected by the Department. Objector and the Party agreed at the hearing that if the Court in *Clymer* denied the Petition for Writ of Mandamus, this would resolve the Petition at issue here, at least as to Clymer and Sylvester. Accordingly, having denied the requested writ of mandamus in *Clymer* and not ordered Secretary to accept the Papers that were initially rejected, their names will not appear on the ballot. This renders the Petition's request to remove Clymer's and Sylvester's names from the ballot moot.

13

## 2. Other Candidates

The Court now turns to Objector's contention that the names of the other candidates on the Papers, Magill (candidate for Attorney General), Goodrich (candidate for Auditor General), Bowman (candidate for Treasurer), and Selker (candidate for United States Senator), who **did file** candidate affidavits must be struck under an "all or nothing" theory based on Objector's reading of Section 951(e). Objectors focus on the statement "[t]here shall be appended to each nomination paper offered for filing an affidavit of each candidate nominated therein," 25 P.S. § 2911(e), as reflecting the General Assembly's intent that if any candidate is struck from the ballot, the **entire** slate of political body candidates must also be struck. The Court is not persuaded.

The object of all statutory construction is to ascertain and effectuate the legislature's intent, and where a statute's language is clear and free from ambiguity, courts may not deviate from the plain language under the guise of pursuing its spirit. Section 1921(a), (b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a), (b). Where the statutory language is capable of multiple reasonable interpretations, however, it is ambiguous, and courts may then consider, among other principles, the consequences of a particular interpretation and the mischief that is remedied by the statute. 1 Pa.C.S. § 1921(c)(3), (6).

Here, the statutory language can be read to mean that each individual who will be relying on the nomination papers **as their own** must file a candidate affidavit. In other words, while the nomination papers are circulated on behalf of the entire group of candidates, those papers are effectively those of each candidate, not of the candidates as a whole. Under this reasoning, the fate of the candidates, other than those of President, Vice President, and their **related** presidential electors, is not tied

14

to each other, such that, generally, the failure of one candidate to attach a candidate affidavit to "their" nomination papers does not invalidate the nomination papers as to a candidate who has done so. Thus, that the Party did not attach the candidate affidavits for all 19 presidential electors does **not** affect those candidates whose candidacies have no nexus with the presidential electors, namely United States Senator, Attorney General, Auditor General, and Treasurer. This is supported by the fact that a political body does not have to nominate a candidate for every open office for which a candidate could be nominated. There was no necessity for the Party to nominate candidates for President and Vice-President, or the presidential electors, to be able to nominate candidates for United States Senator, Attorney General, Auditor General, and Treasurer.

This reasoning is consistent with what occurred in *In re Scroggin*, where the Supreme Court favorably discussed this Court's rejection of the argument that one of the alternative candidates who had filed a candidate affidavit had to be struck from the ballot because his Vice-Presidential "running mate" had been excluded based on the plain language of the Election Code. *See In re Scroggin*, 237 A.3d at 1012 n.4. The Supreme Court described this argument and this Court's disposition as follows:

> The court also rejected Objectors' alternative claim that the Twelfth Amendment to the United States Constitution[7] required Hawkins'

---

[7] The Twelfth Amendment relevantly provides:

The Electors shall meet in their respective states and vote by ballot for President and Vice-President, one of whom, at least, shall not be an inhabitant of the same state with themselves; they shall name in their ballots the person voted for as President, and in distinct ballots the person voted for as Vice-President, and they shall make distinct lists of all persons voted for as President, and of all persons

**(Footnote continued on next page…)**

15

removal from the ballot because his running mate properly was excluded. [*In re Scroggin* (Pa. Cmwlth., No. 460 M.D. 2020, filed Sept. 9, 2020), (Crompton, J.) (single-judge op.)] [s]lip [o]p. at 12-13. Finding no basis for that proposition in the text or history of the amendment, the court reasoned that the existence of a defect "as to one candidate on a political body slate does not impair the candidacy of the other candidates for other offices." *Id.* at 13 (citing *Swartz v. Helm*, 41 Pa. D. & C. 2d 322, 334, 1966 WL 8775 (Dauph. [Cnty.] C.C.P. 1966)). The court determined that this construction was "**consistent with the plain language of the Election Code** which provides **'each'** duly-nominated candidate stands on his or her own merit, based on the eligibility and documentation criteria." *Id.* (emphasis in original).

*In re Scroggin*, 237 A.3d at 1012 n.4 (some emphasis added). Although the Supreme Court ultimately held Hawkins could not appear on the ballot because his substitution was a nullity due to the lack of a candidate affidavit for Scroggin, the Supreme Court did not reject this Court's reasoning on this argument.

However, even if the Court were to conclude that Objector proffered a reasonable interpretation of Section 951(e), thereby making the provision ambiguous, *Tri-County Landfill, Inc. v. Pine Township Zoning Hearing Board*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014), the Court would reach the same conclusion. To resolve the ambiguity, the Court may consider the consequences of a particular interpretation and the mischief that is remedied by the statute. 1 Pa.C.S. §

voted for as Vice-President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the Senate;--The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted;--The person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of Electors appointed . . . . The person having the greatest number of votes as Vice-President, shall be the Vice-President, if such number be a majority of the whole number of Electors appointed[.]

U.S. CONST. amend. XII.

16

1921(c)(3), (6). As has long been acknowledged, the candidate affidavit requirement is an important anti-fraud measure, *Scroggin*, 237 A.3d at 1019;[8] *In re Cianfrani*, 359 A.2d at 384, but that purpose is met as to candidates Magill, Goodrich, Bowman, and Selker because they submitted their candidate affidavits. From those affidavits, the Court can discern whether they are, and should be disqualified as, "so-called 'sore loser' candida[t]es, i.e., those individuals who unsuccessfully attempted to secure the nomination of a political party before filing nomination papers as a candidate of a political body," which *In re Scroggin* identified as the main purpose of the candidate affidavit for nomination papers. 237 A.3d at 1019. That others listed on the nomination papers may not have attached candidate affidavits has no bearing on those that have, absent some kind of allegation of fraud, which is not present here. Moreover, the Court is not persuaded by Objector's argument that electors signing nomination papers do so only because all of the particular candidates are running. The use of placeholder candidates by political bodies is common, and the Supreme Court has acknowledged that placeholder candidates and the substitution of candidates are a valid part of the process of nominating political body candidates. *In re Scroggin*, 237 A.3d at 1019.

The consequence of this interpretation is consistent with both the provision's anti-fraud purpose and the principles that courts should not construe "the Election Code . . . so as [] to deprive an individual of [the] right to run for office or the voters of their right to elect the candidate of their choice." *In re Wesley*, 640 A.2d at 1249;

---

[8] Objector notes that the entire slate of candidates in *In re Scroggin* was initially challenged based on the lack of candidate affidavit of Scroggin, but, ultimately, some of those candidates were allowed to remain on the ballot without explanation. A review of the docket in this Court in *In re Scroggin* reveals that the parties therein agreed to allow those candidates who had filed candidate affidavits to remain on the ballot, which led to an order so directing. *In re Scroggin* (Pa. Cmwlth., No. 460 M.D. 2020, filed Sept. 9, 2020) (Crompton, J.) (single-judge op.).

17

*Ross*, 190 A.2d at 720. "[T]he purpose of the Election Code is to protect, not defeat, a citizen's vote," *Dayhoff*, 808 A.2d at 1006, and the contrary interpretation would deprive and defeat the voters' right to elect candidates from the Party, notwithstanding the candidates' compliance with the Election Code's requirements and the absence of evidence of fraud. Accordingly, even if Section 951(e) was ambiguous, the Court's interpretation permitting Magill, Goodrich, Bowman, and Selker to remain on the ballot is consistent with the statutory language.

## III. CONCLUSION

For the foregoing reasons, the Petition is dismissed as moot in part as to Clymer and Sylvester, based on the decision in *Clymer* that denied the mandamus petition in that matter, and denied as to the Magill, Goodrich, Bowman, and Selker.

_____
**RENÉE COHN JUBELIRER,** President Judge

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Papers of      :
Constitution Party, James N. Clymer,   :
Steven E. Sylvester, Justin L. Magill,  :
Alan R. Goodrich, Sr., Troy Bowman,  :   No. 382 M.D. 2024
and Bernard Selker            :
                            :
Objection of: Ashley Boop       :

## **O R D E R**

**NOW**, August 23, 2024, the Petition to Set Aside the Nomination Papers of the Constitution Party filed by Ashley Boop (Objector) is **DISMISSED** as moot in part and is **DENIED** in part as set forth in the foregoing opinion. The Application to Strike filed by Objector is **DENIED**.

_____
**RENÉE COHN JUBELIRER,** President Judge